*1169
 
 PER CURIAM.
 
 [1]
 

 | following a fatal automobile accident on the evening of April 21, 2007, the state charged defendant in a 12-count bill of information with a variety of crimes, including vehicular homicide, vehicular negligent injuring, driving while intoxicated, possession of marijuana and cocaine, and several traffic offenses. In all, defendant faced a maximum possible sentence of nearly 50 years imprisonment. On March 13, 2008, pursuant to a plea bargain which did not include sentence, defendant pleaded guilty to one count of vehicular homicide, La. R.S. 14:32.1, and to three counts of vehicular negligent injuring in violation of La. R.S. 14:39.1. The state dismissed the remaining charges and the trial court ordered a presentence investigation report. On September 8, 2008, the trial court conducted a sentencing hearing during which members of the victim’s family and | gdefendant’s family addressed the court. At the close of the hearing, the court sentenced defendant on her conviction for vehicular homicide to the maximum term of 30 years imprisonment at hard labor, three years without benefit of parole, probation, or suspension of sentence. The court also imposed maximum sentences of six months on each of the vehicular negligent injuring convictions, to run concurrently with each other and with the 30-year sentence for vehicular homicide. The court denied defendant’s subsequent motion to reconsider sentence based on a bare claim of excessiveness.
 

 Defendant appealed her conviction and sentences to the appellate court, which vacated the sentence on her vehicular homicide conviction as excessive, and remanded for resentencing.
 
 State v. LeBlanc,
 
 08-1533 (La.App. 3rd Cir.6/10/09), 12 So.3d 1125 (Amy, J., dissenting). The state applied for review of that decision in this Court and we granted the application to consider the finding of the court of appeal that “the maximum sentence of thirty years in this case is grossly disproportionate to the severity of the crime and is nothing more than a needless imposition of pain and suffering.”
 
 LeBlanc,
 
 08-1533 at 16, 12 So.3d at 1135. The state and defendant agreed to submit the case on briefs and after considering the arguments made for and against the sentence imposed by the trial court for vehicular homicide, we reverse the decision below and reinstate defendant’s 30-year term of imprisonment at hard labor.
 

 As detailed by the state during the colloquy accompanying defendant’s guilty pleas, in the early evening of April 21, 2007, Michael Hardy and members of his family were traveling in a caravan of several vehicles to a family reunion in Lafayette Parish. Hardy drove the lead car and his son, Kyle, sat beside him in the front passenger seat. Mrs. Genevieve Hardy, Michael Hardy’s wife, and her | ^daughter, Cristi Hardy, occupied the rear passenger seats. The cars traveled southbound on Louisiana Highway 274, known as South Fieldspan. At the same time, defendant was driving northbound on Highway 274. Defendant drove erratically, veered into the edge of a ditch along the highway, emerged from it, and abruptly crossed into the southbound lane of the road. Michael Hardy swerved to the right to miss defendant’s vehicle, but because of the speed with which she emerged from the ditch and shot across the highway, defendant’s car struck the driver’s side of Mr. Hardy’s car, sending it out of control off the southbound lane of Highway 274 and into a
 
 *1170
 
 ditch. Mrs. Genevieve Hardy died in the accident, and her daughter Cristi, suffered serious injury. Michael and Kyle Hardy escaped with relatively minor injuries.
 

 After colliding with the Hardy vehicle, defendant’s car straightened out and she continued northbound, still speeding and driving erratically until she reached the intersection of Highway 274 and Highway 90, where defendant drove through the parking lot of Don’s Country Corner, striking another car. After vaulting across Highway 90 into another ditch, defendant regained the roadway and drove westbound on Highway 90, turning south on Highway 348, where she encountered units of the Lafayette Parish Sheriffs Office, which gave chase and stopped her. When she got out of her vehicle, defendant exhibited slurred speech and glossy red eyes and performed poorly on field sobriety tests. She first informed the officers that an unknown black male had kidnapped her at Don’s Country Corner, beat her up, and forced her to drive while he grasped the steering wheel and caused her to crash several times. She then admitted that she had been the victim of a battery elsewhere and drove erratically because she thought her assailant was chasing her. Defendant also admitted that she had taken Methadone, Xanax, |4Lortab and other drugs on that day. Officers on the scene found cocaine and marijuana in her car and following her arrest, a test performed by the Louisiana State Police Crime Lab on physical samples taken from defendant detected the presence of eight drugs, legal and illegal, including the anti-depressants Amitriptyline (Elavil) and Nortriptyline (Aventyl), painkillers methadone and hy-droeodone (Lortab), anti-anxiety medications Meprobamate (Equanil) and Dia-zepam (Valium or Xanax), and metabolites of controlled dangerous substances, cocaine and marijuana.
 

 At sentencing, members of defendant’s family recalled their strict upbringing in a family life devoid of alcohol and drugs and were therefore at a loss to explain why and how defendant became addicted to drugs, although they recognized that her second husband also had a serious drug problem of his own resulting in an unhappy marriage. However, despite her severe drug problems, and two failed marriages, defendant had managed to raise two teenage boys, one about to graduate from high school, and they spoke well of her as a mother. Defendant’s family physician, Dr. Khorsandi, also testified on her behalf at the hearing and discussed treating her since 2002, at first for neck pain after she had fallen off some steps, and then for chronic lower back pain. He prescribed anti-depressants and anti-anxiety medications for her, and also Lortab for pain. Dr. Khorsandi did not prescribe methadone but did encourage her to go to a methadone clinic apparently for treatment of chronic pain. At some point in 2006, when defendant was admitted to an emergency room next to his office, Dr. Khor-sandi learned that she had tested positive for cocaine. The physician found the results of the drug screen performed by the Louisiana State Police Crime Lab following defendant’s arrest consistent overall with the medications he had 1 ¿prescribed for her, except, of course, for the marijuana and cocaine metabolites found in her system. Dr. Khorsandi agreed with the state that the screens had detected a substantial amount of drugs in defendant’s system, both legal and illegal.
 

 However, in speaking to the probation officer conducting the presentence investigation before the sentencing hearing, defendant attributed the accident not to her drug use but to emotional upset following an earlier physical confrontation with her cocaine dealer, who, defendant recounted, beat her up, blackening her eyes and
 
 *1171
 
 bloodying her nose, after the dealer found some of her personal belongings in defendant’s vehicle. Defendant freely acknowledged a severe drug problem and conceded that although she had begun treatment at the Methadone Clinic in Breaux Bridge, and had been admitted for in-patient drug detoxification for a number of days in the Lafayette General Hospital, she never really sought out any substance abuse treatment and that after her release from the hospital, she resumed her drug use.
 

 In its reasons for sentence, the trial court acknowledged that defendant was a first offender without any prior record and that she was the mother of two adolescent boys who depend upon her for guidance and support. The court also readily acknowledged the general principle “that the minimum sentence is reserved for those instances of this particular crime that occur in the least egregious way or the least serious or offensive way, and that maximum sentence is reserved for those crimes that appear to be the worst way that this particular crime can be committed, the most egregious, the most serious. Everything else is in between.” In determining where defendant’s case belonged on the continuum of the range provided by R.S. 14:32.1, not less than five years imprisonment at hard |filabor, at least three years without benefit of parole, probation, or suspension or sentence, and not more than 30 years imprisonment at hard labor, the trial court looked to the sentencing guidelines in La.C.Cr.P. art. 894.1. The court specifically found that because she was addicted to drugs, defendant posed an undue risk of committing other crimes if given a suspended sentence and placed on probation because “there is an extreme risk that she would fall right back into the lifestyle that she was in before [and] also the risk that she would ... get behind the wheel again.” The court further found that defendant needed to “turn her life around,” and recommended that she receive “every available treatment ... but in an institutional, lock-down type facility.” Finally, while acknowledging that defendant was a first offender who had led a “trouble-free life in terms of involvement with the law,” the court also observed that she had knowingly created a risk of death or great bodily harm to more than one person, that she had, in fact, killed one person and injured three other members of the deceased victim’s family, as a result of a sequence of events which began earlier that day when defendant found herself:
 

 in the company of some people from whom she obtained drugs, and she may or may not have had an altercation with those people, but I certainly believe that that happens all the time, that people who are dealing in drugs or possessing drugs or using drugs do get into altercations, do get into fights. She got in a car with a cocktail of drugs in her system .... [and ultimately] had to be chased down by the police. This makes her story about her being scared because people were following her that she had been in a fight with a little hard to believe.
 

 Less difficult to believe for the trial court was defendant’s statement to police officers following her arrest that “she had taken methadone, Xanax, Lortab, and other drugs that day, and that she had been using cocaine heavily for the past few days,” as evidenced by the cocaine found in her car along with some marijuana. “This shows a reckless disregard for her own life and of the lives of |7others,” the court noted, “and that’s what I am trying to emphasize in this case.” Thus, in the court’s view, “the only punishment that can fit the crime in this particular case, everything considered, is going to be the maximum sentence.” In imposing the sen
 
 *1172
 
 tence, the court took pains to clarify that it was denying defendant parole eligibility only for the mandatory minimum term specified by La. R.S. 14:32.1(B),
 
 i.e.,
 
 for three years.
 

 In vacating that penalty, the court of appeal readily acknowledged that in reviewing a sentence for excessiveness, “[t]he relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.”
 
 LeBlanc,
 
 08-1533 at 5, 12 So.3d at 1129 (citing
 
 State v. Cook,
 
 95-2784 (La.5/31/96), 674 So.2d 957). However, the court of appeal also noted the “seminal sentencing precept,” acknowledged as well by the trial court, that maximum sentences are reserved for the most serious violations of the particular offense and the worst offenders.
 
 Id.,
 
 08-1533 at 6, 12 So.3d at 1129;
 
 see, e.g., State v. Telsee,
 
 425 So.2d 1251,1253 (La.l983)(“The goal of the legislative scheme embodied in [La.C.Cr.P. art. 894.1] is to tailor the individual sentence imposed on the particular defendant to the particular circumstances of the case. The result which obtains is that the maximum sentences are to be reserved for the most egregious and blameworthy of offenders within a class.”). For the court of appeal, defendant did not qualify under that general principle because her involvement in drugs had begun only in the early 2000’s after she suffered her own injuries in either a fall from steps or in a car accident, yet the trial court “did not appear to consider Defendant’s health problems and continuing substance abuse as mitigating factors but rather ignored the cause of her substance abuse and her attempts to get help for the problem.”
 
 LeBlanc,
 
 08-1533 at 14, 12 So.3d at 1134. |sBased on its review of pertinent jurisprudence, the court of appeal concluded that “[i]n cases where the offenders were guilty of driving intoxicated and causing accidents in which deaths resulted, and who were either first-time felony offenders or whose criminal history was minor, the sentences tended to be only one-half to three-quarters of the maximum sentences.”
 
 Id.,
 
 08-1533 at 15, 12 So.3d at 1134. Thus, the court of appeal concluded that in the present case “the trial court abused its discretion when it sentenced Defendant to the maximum without adequate consideration of the circumstances in the case.... While the trial court correctly determined that Defendant was in need of treatment and that the seriousness of the offense required incarceration, we find that the circumstances of her case indicate that a lesser sentence would have served the same purpose.”
 
 Id.,
 
 08-1533 at 15-16, 12 So.3d at 1134-35. At the same time, in remanding the case for resentencing, the court of appeal refrained from suggesting any particular sentence, or any particular sentencing range, that might pass muster under the prohibition of excessive punishment in La. Const, art. I, § 20.
 

 Dissenting, Judge Amy pointed out that the “cocktail” of drugs in defendant’s system when she crashed into the Hardy vehicle included not only prescription drugs but also illegal controlled substances that she had in her possession when the police finally stopped her. This factor led him to “differentiate the criminal aspect of the defendant’s behavior from other cases wherein the maximum sentence was found inappropriate for vehicular homicide defendants with elevated blood alcohol levels.”
 
 LeBlanc,
 
 08-1533 at 1, 12 So.3d at 1135 (Amy, J., dissenting). In light of the trial court’s due consideration of defendant’s “flight from the scene and the fact that she only stopped after a police chase onto a highway” and the court’s conclusion that “these circumstances ^demonstrated the defendant’s reckless disregard for her life and those of others,” Judge Amy found no
 
 *1173
 
 abuse of discretion in the trial court’s imposition of a maximum term of imprisonment at hard labor.
 
 Id.
 

 The court of appeal panel thus divided over the claimed excessiveness of a sentence whose length reflects the legislature’s continuing reassessment of vehicular homicide as a serious felony offense. When the legislature first enacted the crime of vehicular homicide, 1983 La. Acts 635, the penalty it provided, a maximum of five years imprisonment, with or without hard labor, made the offense the equivalent of negligent homicide, a crime long punished by the same maximum sentence. La. R.S. 14:32. Within that range, maximum sentences of five years imprisonment were not uncommon for vehicular homicide, whether charged under La. R.S. 14:32 or La. R.S. 14:32.1.
 
 See, e.g., State v. Pelt,
 
 448 So.2d 1294 (La.1984);
 
 State v. Baranda,
 
 398 So.2d 1053 (La.1981);
 
 State v. Wilcoxon,
 
 26,126 (La.App. 2nd Cir.6/22/94), 639 So.2d 385,
 
 writ denied,
 
 94-1961 (La.12/16/94), 648 So.2d 386;
 
 State v. Wry,
 
 591 So.2d 774 (La.App. 2nd Cir. 1991);
 
 State v. Yates,
 
 574 So.2d 566 (La. App. 3rd Cir.1991),
 
 writ denied,
 
 578 So.2d 131 (La.1991);
 
 State v. Rock,
 
 571 So.2d 908 (La.App. 5th Cir.1990),
 
 writ denied,
 
 577 So.2d 49 (La.1991);
 
 State v. Williams,
 
 546 So.2d 494 (La.App. 4th Cir.1989),
 
 writ denied,
 
 553 So.2d 470 (La.1989).
 

 Over the years, the legislature has steadily increased punishment for the crime, raising the maximum sentence to 15 years imprisonment in 1989 La. Acts 584, then to 20 years imprisonment, with or without hard labor, in 1999 La. Acts 1103, and thereafter, to its present maximum of 30 years imprisonment with or without hard labor. 2004 La. Acts 750. The legislature has since increased the mandatory minimum term of imprisonment from two to five years and increased |]nthe minimum term of parole disability from one to three years. 2006 La. Acts 294. The changes reflect the growing awareness in this state and elsewhere of the carnage caused by intoxicated drivers on the open road.
 
 Cf. Michigan Dept. of State Police v. Sitz,
 
 496 U.S. 444, 451, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990)(“No one can seriously dispute the magnitude of the drunken driving problem or the States’ interest in eradicating it. Media reports of alcohol-related death and mutilation on the Nation’s roads are legion.”).
 

 The broader sentencing ranges provided for the offense over the years have provided trial courts with increased opportunities to exercise their discretion in individualizing punishment to the particular defendant and the particular circumstances of the case, within the general parameter, as recognized in the present case by both the trial court and court of appeal, that sentences at or near the maximum should ordinarily apply only to the most blameworthy offenders committing the most serious violations of the described offense. While comparisons with other similar cases “is useful in itself and sets the stage,”
 
 Telsee,
 
 425 So.2d at 1254, the focus of sentence review remains on the character and propensities of the offender and the circumstances of the offense.
 
 Id.
 

 We agree with Judge Amy that because the circumstances of the present case so clearly demonstrate why the legislature has steadily increased punishment for the crime of vehicular homicide, the decision of where to place defendant’s conduct on that broad sentencing continuum fell within the discretion of the trial court. It clearly appears from the record of sentencing that in determining the length of sentence, the trial court took into account the possibilities for early release on parole. The court specifically noted that because La. R.S. 14:32.1 requires that the offender serve at least three years impris
 
 *1174
 
 onment without benefit of parole, | nprobation, or suspension of sentence, defendant would not be eligible for intensive incarceration and intensive parole supervision as a matter of R.S. 15:574.4.1. However, by imposing only the mandatory minimum three-year term of parole disability, although La. R.S. 14:32.1 permits a court to deny parole eligibility altogether, the court made possible for defendant to secure release on parole after serving one-third of her term, or 10 years at hard labor. R.S. 15:574.4(A). She also remains eligible to earn early release (as if on parole) on good time credits after serving 15 years of her sentence. La. R.S. 15:571.3(B)(1). The presentence report underscored these opportunities when, after recommending a maximum sentence, it reminded the court that “with the possibility of parole release, and guaranteed Good Time Release, the maximum thirty (30) year sentence is actually a fifteen (15) year sentence at best.”
 

 The availability of early release options is generally a relevant consideration in review of sentences for excessiveness.
 
 State v. Green,
 
 418 So.2d 609, 616 (La. 1982);
 
 cf. Lockett v. Ohio,
 
 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (“A variety of flexible techniques— probation, parole, work furloughs, to name a few — and various postconviction remedies may be available to modify an initial sentence of confinement in noncapital cases.”). In the present case the availability of early release appears central to a determination that defendant’s sentence appropriately serves the sentencing goals of deterrence, retribution and rehabilitation. Cf
 
 . Ewing v. California,
 
 538 U.S. 11, 25, 123 S.Ct. 1179, 1187, 155 L.Ed.2d 108 (2003) (“A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation.”) (citation omitted). Defendant’s sentence will require her to serve a substantial term of imprisonment at hard labor commensurate with the seriousness of her crime which resulted in the hgdeath of another human being. In this respect, the trial court did not err in declining to consider defendant’s drug addiction as a circumstance militating for a lesser term of imprisonment because it encompassed not only the legal drugs prescribed to her by Dr. Khorsandi, which she clearly abused, but also the illegal controlled substances she had acquired from other sources and also abused during her self-confessed days-long cocaine binge before she plowed into the Hardy family vehicle. By defendant’s own admission during the presentence investigation, her longstanding abuse of legal and illegal drugs had been punctuated by only a few, half-hearted attempts to receive treatment. Nor did defendant’s guilty pleas to vehicular homicide and negligent vehicular injuring necessarily reflect an acknowledgment of the direct correlation between her drug abuse and the death of Mrs. Hardy or recognition of her own moral culpability. Defendant reaped considerable benefit from her plea bargain with the state, which reduced her sentencing exposure by nearly 20 years, and it was scarcely a reassuring sign of her potential for rehabilitation that in speaking to the probation officer after she entered her guilty pleas defendant attributed the fatal accident not to the “cocktail” of drugs in her system but to a fight with her cocaine dealer who believed defendant had stolen some of her possessions.
 

 At the same time, defendant’s sentence also affords her incentives for rehabilitation within the prison system to take advantage of early release on parole. Even then, she will remain subject to continuing state supervision for the unexpired term of her sentence, La. R.S. 15:574.6, as a means of minimizing the risk that she may resume her abuse of legal and illegal drugs
 
 *1175
 
 and once more pose a serious threat to social order. Given the existence of ameliorative alternatives and the extreme circumstances surrounding commission of the crime, we cannot agree with | ^the court of appeal majority that the sentence imposed by the trial court, although the maximum penalty for the offense, “makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime.”
 
 State v. Dorthey,
 
 623 So.2d 1276, 1280 (La.1993) (internal quotation marks and citation omitted).
 

 We therefore reverse the decision below, reinstate defendant’s sentence for vehicular homicide, and remand this case to the district court for execution of sentence.
 

 COURT OF APPEAL DECISION REVERSED; DEFENDANT’S SENTENCE REINSTATED; CASE REMANDED
 

 [1]
 

 . Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.