| | | |
|---|---|---|
| **STATE OF LOUISIANA** | * | **NO. 2021-KA-0131** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **TASHONTY C TONEY** | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 545-469, SECTION "A"
Honorable Laurie A. White, Judge
\* \* \* \* \* \*
**Judge Sandra Cabrina Jenkins**
\* \* \* \* \* \*
(Court composed of Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown)

**LOBRANO, J., CONCURS IN THE RESULT.**
**BROWN, J., CONCURS IN THE RESULT**

Jason Rogers Williams, District Attorney
G. Benjamin Cohen, Chief of Appeals
David B. LeBlanc, Assistant District Attorney
Orleans Parish District Attorney's Office
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Ralph Shipley Whalen, Jr.
ATTORNEY AT LAW
1100 Poydras Street
Suite 2950
New Orleans, LA 70163--1133

      COUNSEL FOR DEFENDANT/APPELLANT

          **SENTENCE VACATED; REMANDED**

        **NOVEMBER 3, 2021**

*SCJ*

Defendant, Tashonty Toney, appeals the 91-year cumulative sentence imposed by the trial court after he pled guilty to a sixteen-count indictment. Defendant pled guilty as charged to two counts of vehicular homicide with a Blood Alcohol Concentration (BAC) over .20 percent, six counts of first degree vehicular negligent injuring, one count of vehicular negligent injuring, and seven counts of hit-and-run driving with no death or serious bodily injury. Defendant's guilty plea agreement did not include an agreement on sentencing, which was to be determined by the trial court following a sentencing hearing. The trial court imposed the maximum sentences for each count of defendant's conviction and ordered the sentences to run consecutively.

Based upon our review of defendant's sentencing, and in light of sentencing guidelines and jurisprudence, we find that the trial court failed to sufficiently articulate reasons and considerations for its imposition of maximum, consecutive sentences. Consequently, we cannot adequately review defendant's arguments regarding the excessiveness of his sentence and the denial of his motion to

1

reconsider. For the reasons provided herein, we vacate defendant's sentence and remand to the trial court to hold a meaningful sentencing hearing.

## FACTS AND PROCEDURAL BACKGROUND

Because defendant entered pleas of guilty as charged, the facts underlying defendant's convictions were not developed at any hearing or at a trial. The facts of this case are derived from the New Orleans Police Department arrest report gist and from video recordings introduced at the sentencing hearing.[1]

On March 2, 2019, at approximately 8:05 p.m., defendant was driving a Chevy Camaro southbound on Esplanade Avenue, a divided two-lane street with a designated bike lane. Driving at a high rate of speed in excess of the 35 mph speed limit, surveillance video captured defendant veer his car right out of the traffic lane, drive into the designated bike lane, and surpass two cars travelling in the traffic lane. Moments later, out of view of surveillance video, defendant's car struck three bicyclists travelling southbound in the designated bike lane. All three bicyclists were thrown from their bicycles. Defendant did not stop but continued driving at a high rate of speed in the designated bike lane, striking four more bicyclists and side-swiping several parked cars in the parking lane. As defendant continued southbound on Esplanade Ave., approximately four blocks from where he struck the first group of bicyclists, defendant swerved toward the neutral ground attempting to avoid another vehicle travelling in the traffic lane, but defendant collided with that vehicle and came to rest on the neutral ground. After the crash, defendant exited his vehicle and fled the scene on foot. Witnesses to the collision

---

[1] The State introduced four video recordings: three surveillance recordings capturing scenes during the incident along Esplanade Avenue on March 2, 2019; and one NOPD body camera recording from Officer Walker who processed defendant at the NOPD Traffic/DUI Office following his arrest.

and the preceding incidents followed defendant, caught up with him, and detained him two blocks from the scene of the collision until NOPD officers arrived.

After the collision, emergency medical services responded first to the scene to render aid to the victims struck by defendant's vehicle. Two of the bicyclist victims, Sharee Walls and David Hynes, were pronounced deceased on the scene. Seven other bicyclist victims struck by defendant's vehicle suffered numerous, serious and critical injuries.

When NOPD officers arrived to investigate, an on-scene show-up identification was conducted with a witness who identified defendant as the driver of the Chevy Camaro who exited the vehicle and fled the scene. Officers noted that defendant appeared to be impaired. Defendant was taken into custody on suspicion of driving under the influence (DUI) and transported to the NOPD Traffic/DUI Office on Tchoupitoulas Street.

While at the DUI office, NOPD Officer John Walker activated his body worn camera. Ofc. Walker noted that defendant appeared impaired, had watery, bloodshot eyes, slurred his speech when he spoke, and emitted an odor of alcohol. Ofc. Walker read defendant his *Miranda* rights and his rights relative to chemical testing. Defendant acknowledged that he understood his rights; he elected not to speak with Ofc. Walker and stated his refusal to take a breathalyzer test three times. Ofc. Walker then explained the procedure for obtaining a warrant for a blood test and transporting defendant to the hospital for his blood to be drawn. While Ofc. Walker informed defendant of his rights and the procedures, defendant became visibly upset and made several statements about letting his family down and having a drinking problem.

3

Approximately five hours after the incident, samples of defendant's blood and urine were collected at the University Medical Center, pursuant to a signed warrant to retrieve biological specimens. The results of the chemical tests indicated a blood alcohol concentration (BAC) of .14. Accounting for the rate of absorption and elimination of alcohol from the body at .015 per hour, the State submits defendant's BAC was .215 at the time of the incident.

On May 2, 2019, the State filed a sixteen-count indictment, charging defendant with one count of hit-and-run driving—no death or serious injury, a violation of La. R.S. 14:100(C)(1); two counts of vehicular homicide with a BAC greater than .20, a violation of La. R.S. 14:32.1(C); six counts of first degree vehicular negligent injuring, a violation of La. R.S. 14:39.2; one count of vehicular negligent injuring, a violation of La. R.S. 14:39.1; and six more counts of hit and run driving—no death or serious injury. At his arraignment on May 6, 2019, defendant pled not guilty to all charges in the indictment.

On October 21, 2019, defendant withdrew his not guilty plea and pled guilty as charged to fourteen counts of the indictment, excluding the two counts of vehicular homicide. Defendant acknowledged that the plea agreement he signed on those fourteen counts did not include a sentencing agreement or recommendation. The trial court questioned defendant regarding his waiver of rights, informed him of the possible sentencing range for each conviction, found defendant was knowingly and voluntarily entering the guilty plea, accepted his guilty plea, and held the sentencing date open until after the trial on the two remaining counts of vehicular homicide, set for October 28, 2019.

On October 28, 2019, defendant withdrew his not guilty plea and pled guilty as charged to the two remaining counts of vehicular homicide. The trial court

4

again questioned defendant regarding his waiver of rights and his understanding that, because he entered a "blind" plea agreement, there was no agreement or recommendation on defendant's sentencing. The trial court found defendant was entering his plea knowingly and voluntarily, and accepted his guilty plea.

On that same day, the trial court proceeded with the sentencing hearing and heard victim impact testimony. The trial court heard testimony from several family members of the two deceased victims, relaying the impact of the loss of their loved ones. The surviving seven victims testified as to the extent of their injuries and the impact of the incident on their lives. The State also offered into evidence, with defendant's objection, the three surveillance videos capturing parts of the incident, photographs of the scene of the incident, and the body camera video from the DUI office.

The following day, October 29, 2019, defendant presented testimony from his family members. In cross-examination of defendant's sister, Taryn, the State played a recording in open court of a jail call between defendant and his sister. Defendant then testified on his own behalf and expressed his remorse to the victims and their families.

After a brief recess, the trial court imposed sentences against defendant for all sixteen counts of the indictment. The sentences imposed are as follows:

Count 1: hit and run driving—no death or serious bodily injury: six months in Orleans Parish Prison (OPP), to run concurrent with any and all other sentences;

Counts 2 and 3: vehicular homicide with a BAC greater than .20: thirty years at hard labor on each count, without benefit of probation, parole, or

5

suspension of sentence, to run consecutive to each other and to all other sentences; and a fine of $2000 on each count;

Counts 4 - 9:  first degree vehicular negligent injuring:  five years at hard labor on each count, with the sentences for each count to run consecutive to each other and to the previous sentences; and a fine of $2000 on each count;

Counts 11 - 16:  hit and run driving—no death or serious bodily injury:  six months in OPP on each count, to run concurrent with each other and with any and all other sentences;

Count 10: vehicular negligent injuring:  six months in OPP, to run consecutive to Counts 11-16; and a fine of $1000.

Cumulatively, the trial court imposed a sentence of 91 years, including sixty years imposed without benefit of parole, probation, or suspension of sentence.

On November 27, 2019, defendant filed a motion to reconsider sentence and to supplement the record with the jail recording played in open court before sentencing.  In support of defendant's motion, four of the victims submitted a letter to the trial court in support of reconsideration and a reduced sentence for defendant.  On February 28, 2020, the trial court held a hearing and denied defendant's motion to reconsider sentence.  The court minutes from that date also reflect that the State filed into the trial court record an audio CD of the jail call.

Thereafter, defendant filed this timely appeal of his sentence.

**DISCUSSION**

Defendant raises three assignments of error in this appeal of his sentence.

1. The trial court abused its discretion in imposing a 91-year cumulative sentence on a first time offender. The sentence makes no measurable contribution to the acceptable goals of punishment, it constitutes nothing

more than the purposeless imposition of pain and suffering, and it is grossly out of proportion to the severity of crimes that involve no criminal intent.

2. The trial court erred in denying defendant's motion to reconsider sentence.

3. The trial court erred in imposing consecutive sentences for offenses that occurred in a single course of conduct without providing sufficient justification from evidence in the record.

In essence, defendant contends that the trial court abused its broad sentencing discretion and imposed an excessive sentence given the facts in the record, the lack of criminal intent, and the history of the defendant.

We begin by acknowledging that the trial court imposed a legal, maximum sentence within the range provided by the applicable criminal statutes.[2] For

---

[2] La. R.S. 14:100(C)(1)(b) provides in pertinent part, "[w]hoever commits the crime of hit-and-run driving where there is no death or serious bodily injury shall be fined not more than five hundred dollars, imprisoned for not less than ten days nor more than six months, or both…".

La. R.S. 14:39.1(C) provides, "[w]hoever commits the crime of vehicular negligent injuring shall be fined not more than one thousand dollars or imprisoned for not more than six months, or both."

La. R.S. 14:39.2(D) provides, "[w]hoever commits the crime of first degree vehicular negligent injuring shall be fined not more than two thousand dollars or imprisoned with or without hard labor for not more than five years, or both."

La. R.S. 14:32.1 provides in relevant parts as follows:

(B) Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years. … If the operator's blood alcohol concentration is 0.15 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. …

(C) Whoever commits the crime of vehicular homicide shall be sentenced as an offender convicted of a crime of violence if the offender's blood alcohol concentration, at the time of the offense, exceeds 0.20 percent by weight based on grams of alcohol per one hundred cubic centimeters.

(D) Notwithstanding the provisions of Code of Criminal Procedure Article 883, if the offense for which the offender was convicted pursuant to the provisions of this Section proximately or directly causes the death of two or more human beings, the

sentences imposed within the statutory range, a trial court abuses its discretion only when it contravenes the prohibition of cruel and excessive punishment in La. Const. art. 1, §20. *State v. Soraparu*, 97-1027, p. 1 (La. 10/13/97), 703 So.2d 608, 608 (quoting *State v. Sepulvado*, 367 So.2d 762, 767 (La. 1979)). A sentence is unconstitutionally excessive when it imposes punishment grossly out of proportion to the severity of the offense or if it constitutes nothing more than the needless imposition of pain and suffering. *State v. Bonanno*, 384 So.2d 355, 357 (La. 1980).

On appellate review of the trial court's imposition of sentence, the relevant question for the reviewing court is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. *State v. Smith*, 01-2574, pp. 6-7 (La. 1/14/03), 839 So.2d 1, 4. The statutory sentencing guidelines provided by La. C.Cr.P. art. 894.1 furnish criteria by which the reviewing court can measure whether a sentence within the statutory limits is nevertheless excessive. *Bonanno*, 384 So.2d at 357. The Louisiana Supreme Court has further explained the significance of the sentencing guidelines as follows:

> The goal of the legislative scheme embodied in [art. 894.1] is to tailor the individual sentence imposed on the particular defendant to the particular circumstances of the case. The result which obtains is that the maximum sentences are to be reserved for the most egregious and blameworthy of offenders within a class. Accordingly, insight into the nature of the offender and his offense may be gained by asking, for example, whether (1) there is undue risk the defendant will commit another crime, (2) the defendant needs to be institutionalized, (3) a lesser sentence will deprecate the seriousness of defendant's crime, (4) defendant's conduct caused or threatened harm, (5) defendant has a criminal record, (6) defendant will respond to rehabilitation.

---

offender shall be sentenced separately for each victim, and such sentences shall run consecutively. …

8

Another factor is comparison of the defendant's punishment with the sentences imposed for similar crimes by the same court and other courts. Such a comparison helps to assure that a defendant's sentence will be proportional in comparison with other offenders—that the maximum sentences will be reserved for the most egregious or blameworthy of offenders, and that others of similar conduct will not receive sentences lighter than the defendant's.

*State v. Telsee*, 425 So.2d 1251, 1253-54 (La. 1983) (internal citations omitted).

Additionally, in this case, we find the history of the sentencing range for the offense of vehicular homicide, as discussed by the Louisiana Supreme Court in *State v. Leblanc*, 09-1355 (La. 7/6/10), 41 So.3d 1168, to be pertinent to our review:

When the legislature first enacted the crime of vehicular homicide, 1983 La. Acts 635, the penalty it provided, a maximum of five years imprisonment, with or without hard labor, made the offense the equivalent of negligent homicide, a crime long punished by the same maximum sentence. La. R.S. 14:32. Within that range, maximum sentences of five years imprisonment were not uncommon for vehicular homicide, whether charged under La. R.S. 14:32 or La. R.S. 14:32.1. (citations omitted).

Over the years, the legislature has steadily increased punishment for the crime, raising the maximum sentence to 15 years imprisonment in 1989 La. Acts 584, then to 20 years imprisonment with or without hard labor, in 1999 La. Acts 1103, and thereafter, to its present maximum of 30 years imprisonment with or without hard labor. 2004 La. Acts 750. The legislature has since increased the mandatory minimum term of imprisonment from two to five years and increased the minimum term of parole disability from one to three years. 2006 La. Acts 294. The changes reflect the growing awareness in this state and elsewhere of the carnage caused by intoxicated drivers on the open road. (citation omitted).

The broader sentencing ranges provided for the offense over the years have provided trial courts with increased opportunities to exercise their discretion in individualizing punishment to the particular defendant and the particular circumstances of the case, within the general parameter, as recognized in the present case by both the trial court and court of appeal, that sentences at or near the maximum should ordinarily apply only to the most blameworthy offenders committing the most serious violations of the described offense. While comparisons with other similar cases "is useful in itself and sets the stage," the focus of sentence review remains on the character and propensities of the offender and the circumstances of the offense. *Telsee*, 425 So.2d at 1254.

*Leblanc*, 09-1355, pp. 9-10, 41 So.3d at 1173.

In *Leblanc*, defendant was charged in a 12-count bill with vehicular homicide, vehicular negligent injuring, driving while intoxicated, possession of marijuana and cocaine, and several traffic offenses. As in the instant case, defendant entered into a plea agreement that did not include sentence, pleading guilty to one count of vehicular homicide, and to three counts of vehicular negligent injuring. The trial court ordered a presentence investigation and conducted a sentencing hearing at which members of the victim's family and defendant's family addressed the court. The trial court then imposed a sentence on defendant's conviction of vehicular homicide of 30 years imprisonment at hard labor, three years without benefit of parole, probation, or suspension of sentence. The trial court also imposed the maximum sentences of six months on each of the vehicular negligent injuring convictions, to run concurrently with each other and with the 30-year sentence for vehicular homicide. On appeal, the Third Circuit vacated the 30-year sentence for vehicular homicide as excessive and remanded for resentencing. The Louisiana Supreme Court then granted the State's writ to review the Third Circuit's finding of excessiveness. *Leblanc*, 09-1355, pp. 1-2, 41 So.3d at 1169.

In reviewing the trial court's imposition of sentence, the Louisiana Supreme Court reviewed the facts in the record from defendant's guilty plea colloquy, the testimony presented at the sentencing hearing, the findings of the presentence investigation, and the trial court's stated reasons for sentence. The Court found that the trial court had given thorough consideration to the defendant's history both as a first offender and as a drug addict, who showed reckless disregard for life and

whose actions resulted in a death after she took a cocktail of prescription drugs, cocaine, and marijuana and got behind the wheel. In concluding its review of the trial court's sentence, the Court significantly noted that the trial court clearly took into account the possibilities of early release on parole in determining the length of defendant's sentence.[3] The Court then concluded that "[g]iven the existence of ameliorative alternatives and the extreme circumstances surrounding commission of the crime", the trial court's "decision of where to place defendant's conduct on that broad sentencing continuum fell within the discretion of the trial court" and the punishment imposed was not excessive. *Leblanc*, 09-1355, pp. 10, 12, 41 So.3d at 1173, 1175.

In the case *sub judice*, our review of the trial court's sentencing finds that the trial court did not provide a thorough review of facts or record evidence on which it relied, nor did the trial court individualize the sentence in consideration of defendant's first offender history, his character, or propensity for criminal behavior. We find the trial court failed to allow defendant to present mitigation;[4] that the trial court referred to evidence submitted to the trial court but not introduced into the record;[5] and that the trial court relied disproportionately on its impressions of defendant's demeanor rather than his testimony and statements of

---

[3] "The presentence report underscored these opportunities when, after recommending a maximum sentence, it reminded the court that 'with the possibility of parole release, and guaranteed Good Time Release, the maximum thirty (30) year sentence is actually a fifteen (15) year sentence at best.'" *Leblanc*, 09-1355, p. 11, 41 So.3d at 1174.

[4] On October 28, 2019, prior to the guilty plea colloquy, defense counsel noted that it wanted to present the testimony of defendant's treating physician in mitigation but the physician was not present in court and had not been subpoenaed at that time. Although the trial court issued an instanter subpoena for the physician to appear the following day, it had not been delivered and the trial court proceeded with the sentencing hearing without that requested mitigation testimony.

[5] At the beginning of sentencing, the trial court stated, "[t]he photographs were returned to the State which I reviewed; there was video which was returned to you. I'm not placing that in the record." Any evidence reviewed by the trial court and taken into consideration in its findings must be entered into the record to allow for proper appellate review. La. Const. art. 1, §19.

11

remorse.[6] In addition, the trial court did not provide any reasons for denying defendant all parole eligibility on his consecutive sentences for vehicular homicide.

Based on a survey of comparable cases, the trial court in this case has imposed the harshest sentence for vehicular homicide in Louisiana jurisprudence; and defendant's 91-year cumulative sentence effectively constitutes a life sentence for offenses that lack criminal intent. *See State v. Gordon*, 17-846 (La. App. 3 Cir. 3/28/18), 240 So.3d 301 (finding consecutive sentences of 18 years each, 3 years to be served without benefit, for three counts of vehicular homicide was not excessive given defendant's history and drug abuse); *State v. Lewis*, 13-1588 (La. App. 4 Cir. 8/27/14), 147 So.3d 1251 (finding a sentence of 20 years for vehicular homicide, with 5 years to be served without benefits, and a concurrent sentence of 5 years for first degree vehicular negligent injuring was not excessive) *State v. Morain*, 07-1207 (La. App. 3 Cir. 4/2/08), 981 So.2d 66 (finding that the trial court's imposition of the maximum 20-year sentence for vehicular homicide was excessive given that the record does not show defendant to be one of the worst offenders); *State v. Landry*, 09-260 (La. App. 3 Cir. 11/4/09), 21 So.3d 1148 (finding a sentence of 30 years for vehicular homicide with all but 18 years suspended and 5 years to be served without benefits was not excessive where defendant's BAC was 0.231 at the time of the accident).

There is no question that the defendant's acts on March 2, 2019, demonstrate reckless disregard for the safety and lives of others. Certainly, the pain and suffering caused by defendant's actions are deserving of a harsh penalty of

---

[6] The trial court recounted images of defendant's demeanor on the night of the incident, which can be a relevant consideration, but does not preclude rehabilitation which is a significant consideration. The trial court also referenced a jail call which was not entered into this record, and weighed statements made by defendant's sister against defendant. The trial court also dismissed defendant's testimonial remorse.

imprisonment. This Court also acknowledges that retribution and deterrence are worthy considerations when imposing sentence in a case such as this. *Cf. Ewing v. California*, 538 U.S. 11, 25, 123 S.Ct. 1179, 1187, 155 L.Ed.2d 108 (2003) ("A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation.")(citation omitted). However, the trial court shall rely on the facts and evidence properly introduced into the record and state its considered reasons for imposing sentence, including the restriction or denial of parole eligibility.

Additionally, the trial court failed to articulate its reasoning for imposing consecutive sentences. The general rule for concurrent versus consecutive sentences is set forth in La. C.Cr.P. art. 883, which provides in pertinent part,

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

Louisiana courts view consecutive sentences to be similar in nature to a habitual offender enhancement, as first explained by the Louisiana Supreme Court in *State v. Sherer*, stating:

> Because the function of the consecutive sentence should be similar to the sentence imposed on habitual or dangerous offenders, sentences for crimes arising from a single course of conduct should be concurrent rather than consecutive, absent a showing that the offender poses an unusual risk to the safety of the public. We cannot presume that the sentencing judge viewed the defendant as an unusual risk to the safety of the public because he did not so state. Instead, the judge expressed his belief that the defendant had become virtually rehabilitated and should be released on parole at the earliest possible time. For these reasons, the imposition of consecutive rather than concurrent sentences totaling 12 years at hard labor upon a defendant deemed parole-eligible by the sentencing judge for crimes of criminal negligence, rather than intentional offenses, arising from a single

course of conduct, are unexplained by the judge's statements and unillumined by this problematic record.

437 So.2d 276, 277 (La. 1983) (internal citation omitted).

Relying on the reasoning in *Sherer*, the Third Circuit recently found the imposition of multiple consecutive, habitual offender enhanced sentences to be "suspect without some evidence the defendant is an undue risk to the public" and remanded the matter to the trial court for resentencing with concurrent sentences. *State v. Brown*, 19-682, p. 13 (La. App 3 Cir. 6/17/20), 299 So.3d 661, 670. In doing so, the Third Circuit additionally noted,

> [T]he recently enacted Louisiana's Justice Reinvestment Reforms of 2017 implore [the courts] to seriously consider Louisiana's history of long-term incarceration. *See* 2017 Acts Nos. 258, 260, 261, 262, 264, 265, 277, 280, 281, and 282. In keeping therewith, we find the imposition of concurrent rather than consecutive sentences for crimes arising out of the same conduct would better serve the policy behind the Justice Reinvestment Initiative of reducing sentences for certain drug offenses as well as habitual offender penalties.

*Id*.

In the instant case, the trial court failed to articulate reasons for ordering the sentences for each count of first degree vehicular negligent injuring to run consecutively to each other and to the sentences for vehicular negligent injuring and hit-and-run driving, and to the sentences for vehicular homicide. While the sentences for vehicular homicide are statutorily required to run consecutively, pursuant to La. R.S. 14:32.1(D), the imposition of consecutive sentences for the offenses that arose from the same course of defendant's conduct is unexplained by the trial court and unilluminated by this record. *See State v. Lee*, 94-2584, p. 9 (La. App. 4 Cir. 1/19/96), 668 So.2d 420, 427 ("[A]lthough concurrent sentences are the usual rule for convictions arising out of a single course of illegal conduct, consecutive sentences will not necessarily be found excessive, but, rather other

factors must be considered. … prior criminal history of the defendant; whether the defendant poses an unusual risk to public safety; the harm done to the victims; and the viciousness of the crime.")(citations omitted).

In consideration of the foregoing, specifically the lack of sufficiently articulated reasons based on record evidence for the trial court's imposition of maximum, consecutive sentences against this defendant, we find this record is insufficient to allow for a meaningful review of defendant's excessiveness claim. *See State v. Brazell*, 17-0032 (La. App. 4 Cir. 4/18/18), 245 So.3d 15 (vacating defendant's sentence based on the absence of any reasons or considerations for the sentence imposed and denial of motion for downward departure). Moreover, given that the 91-year cumulative sentence imposed is the harshest penalty imposed for these offenses, "there appear[s] to be a substantial possibility that the defendant's complaints of an excessive sentence ha[ve] merit", and we find a remand for resentencing is appropriate. *Soraparu*, 97-1027, p. 1, 703 So.2d at 608 (quoting *State v. Wimberly*, 414 So.2d 666, 672 (La. 1982)).

## CONCLUSION

For the foregoing reasons, we vacate defendant's sentences and we remand to the trial court for a meaningful sentencing hearing. At that sentencing hearing, defendant shall be afforded the opportunity to present mitigating evidence and testimony, and, at the conclusion of the hearing, the trial court shall state the considerations taken into account and the factual basis found in the record for (1) imposing a maximum sentence for any count of the conviction, (2) imposing consecutive sentences, and (3) restricting benefits on sentences.

**SENTENCE VACATED; REMANDED**

15