STATE OF LOUISIANA

VERSUS

MAURICE ERVIN

NO. 23-KA-11

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 22-1064, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

August 30, 2023

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and John J. Molaison, Jr.

**<u>SENTENCE AND CONVICTION AFFIRMED; MATTER REMANDED</u>**
    **JJM**
    **SMC**

**<u>CONCURS WITH REASONS</u>**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Andrea F. Long
     Kristen Landrieu
     Stephen Downer

COUNSEL FOR DEFENDANT/APPELLANT,
MAURICE ERVIN
     Gwendolyn K. Brown

DEFENDANT/APPELLANT,
MAURICE ERVIN
     In Proper Person

**MOLAISON, J.**

The defendant/appellant, Maurice Ervin, appeals his convictions of two counts of armed robbery. For the reasons that follow, we affirm his convictions and sentences. We remand to the trial court for the limited purpose of correcting the October 13, 2022 minute entry and UCO to state that the sentences are to be served at hard labor and without the benefit of parole, probation, or suspension of sentence.

## PROCEDURAL HISTORY

On March 14, 2022, the Jefferson Parish District Attorney filed a bill of information charging the defendant, Maurice Ervin, with two counts of armed robbery in violation of La. R.S. 14:64. The defendant pled not guilty at arraignment.

The defendant was tried before a twelve-person jury on September 13 and 14, 2022, and at the conclusion of trial, the jury found the defendant guilty as charged on both counts. On September 19, 2022, the defendant was sentenced for each count to fifty years imprisonment at hard labor with a consecutive five-year hard labor sentence for the firearm enhancement pursuant to La. R.S. 14:64.3(A). The sentences were ordered to run concurrently.

On September 20, 2022, the defense counsel filed a motion to reconsider the sentences, arguing that the defendant's sentences were excessive because he was a juvenile, his sentences should not have been imposed with the firearm enhancement, and he was entitled to parole eligibility as a juvenile offender pursuant to La. R.S. 15:574.4. On October 13, 2022, the trial court granted the defendant's motion to reconsider the sentences in part and denied it in part. The court vacated the portion of the sentences on each count to delete the consecutive five-year sentence for the firearm enhancement. The judge later stated, "Okay, so we agree his sentence is fifty years on each count to run concurrent with each

other." The court denied the motion as to the claim that defendant's fifty-year-sentence on each count was excessive.

This timely appeal followed.

FACTS

At trial, Stanley and Isabel Cowley testified that on February 12, 2022, they were returning home in Mr. Cowley's white Lexus sedan when he pulled over in an empty lot on Hickory Avenue[1] to take a photograph of the roof of a building. Mrs. Cowley testified that upon exiting the vehicle, her husband left his door ajar, and a young black man got into the driver's seat. When she turned her face to look at him, he put a gun "at [her] forehead." Mrs. Cowley explained that her cell phone was charging on the center console at the time, and he would not let her take the phone. When her husband opened the driver-side door, he was surprised by the young man who had entered their car. Mrs. Cowley elaborated that as the car started to backup, her husband tried to fight him to get the gun away and to save her. The open door of the vehicle knocked Mr. Cowley down, rolling over part of his foot, and Mrs. Cowley was able to get out of the vehicle. A surveillance video depicting the robbery was played for the jury while Mrs. Cowley narrated the events in the video. Mrs. Cowley testified that after the assailant fled in their vehicle, she sat next to her husband on the ground and observed their vehicle traveling in the opposite direction than it initially fled. Someone called 9-1-1, the police arrived, and she gave a statement, then went to the hospital to be with her husband.[2]

Mr. Cowley testified that he pulled over to take pictures of the shingles on the roof of a building. He elaborated that the roof of their home had been damaged

---

[1] The street was referred to by various names throughout the record. It will be called "Hickory Avenue" in this opinion.
[2] Mrs. Cowley explained that she later realized that she "wet [her] pants" during this incident.

by Hurricane Ida and he thought the shingles on the roof he stopped to photograph would look good on their home. Mr. Cowley explained that he walked about ten steps away from the passenger side of the vehicle to take the photograph. As he returned, he was not aware of anything occurring inside of his vehicle because his attention was on his phone. Mr. Cowley testified that after opening the door, he saw a black person wearing black clothes in his seat, and this person pointed a "black Glock" at him. Mr. Cowley reached into the vehicle, grabbed the barrel of the gun and the person's hand, and pushed the gun away. Once the vehicle started to move backwards and accelerated, he ran alongside it and was thrown to the ground by the driver-side door. The driver-side front wheel of the vehicle rolled over his left foot.[3] Mr. Cowley laid down in the grass since he could no longer stand. Shortly afterward, he saw his vehicle speeding down the street in the opposite direction. He was transported by an ambulance to UMC hospital for treatment of his injuries. Mr. Cowley testified that he did not have any firearms in his vehicle that day. Mr. Cowley testified that following the incident, he had to get a new vehicle, and he received additional treatment for his injuries, which included a fracture in his left foot. In addition, he and his wife have had difficulty sleeping or would "wake up sweating" thinking about this incident.

Sarah Craig testified that on February 12, 2022, she and her mother were headed home when they noticed a white Lexus pulled to the side of the road on Hickory Avenue. Ms. Craig saw the driver, whom she described as an older white man standing outside of the vehicle, taking pictures of a building. As they drove by, she saw a "young African-American individual run behind [their] vehicle and hop into the driver's side of that Lexus." She called 9-1-1 once the individual

---

[3] Mr. Cowley confirmed that he reviewed surveillance video in relation to this case, and he identified his vehicle and himself in the video. During his testimony, he also narrated the events captured in the video.

began backing up the Lexus.[4]  While on the phone with 9-1-1, she and her mother followed the Lexus as it turned left onto Sauve and headed towards Jefferson Highway.  Ms. Craig testified that when the Lexus made a U-turn on Paula, she was able to get a clear, unobstructed view of the driver.  Ms. Craig also made a U-turn and continued to follow the Lexus.  Ms. Craig then complied with the 9-1-1 dispatcher instruction to return to the scene.  At the scene, Ms. Craig observed the frantic, female victim comforting her husband as they waited for an ambulance to arrive.  Ms. Craig gave a statement to detectives.  Ms. Craig identified the defendant in open court as the person she saw driving the Lexus.[5]

Officer Michael Barnett, of the Harahan Police Department, testified that the Tiburon report[6] showed a "suspicious person" call regarding "a black male with some kind of black hoodie or mask and a firearm" on Hickory Avenue and possibly at the apartments or residences.  He testified that the dispatcher stated there were multiple calls, and "within two minutes of the original call," the call changed to a carjacking with injuries.  Officer Barnett joined in the pursuit of the fleeing vehicle, on Hickory Avenue, which is a two-lane street, then onto Jefferson Highway.  Officer Barnett testified that at one point during the chase, the defendant crossed over into the westbound lane of Jefferson Highway, traveling against the flow of traffic, in an effort to avoid a traffic jam.  The officers were able to catch up to the vehicle when the vehicle hit a pole.  Officer Barnett assisted in handcuffing the driver after he was pulled out of the vehicle, and he identified the driver as the defendant.[7]  The defendant was the only occupant of the vehicle.

---

[4] The parties stipulated that Nancy Clary is the custodian of records for the Jefferson Parish Sheriff's Office, and that she would certify that the 9-1-1 calls in this case were authenticated business records. The calls, including Ms. Craig's call, were played for the jury.

[5] Ms. Craig identified her vehicle on the surveillance video, which depicted this incident.

[6] The Tiburon report shows a timeline of what happened in this incident, and was admitted into evidence.

[7] Officer Allena Nacio with the Harahan Police Department testified similarly.  She stated that as she was en route to the scene, a vehicle, which matched the description of the vehicle given to her earlier, pulled out in front of her on Hickory Avenue. She followed the vehicle, which subsequently crashed into a post in the 4700 block of Jefferson Highway.  She observed her sergeant pull the defendant out of the driver's

Officer Barnett then proceeded to the scene of the carjacking where he was told by a witness that just before the carjacking, the assailant had entered his apartment more than once, and he appeared to be "looking for someone or something."

Sergeant Eric Crovetto, of the Harahan Police Department, testified that as he was responding to the call, he observed a white Lexus that matched the description of the vehicle and person involved in the carjacking. Sergeant Crovetto testified that the vehicle was traveling at a high rate of speed "going around on the sidewalk and on the grass, going around other vehicles." He testified that the driver came "very, very close" to the workers when he drove through a construction site. He further detailed that the driver was traveling eastbound in the westbound lanes of Jefferson Highway when he lost control, and hit a utility pole. After placing his own vehicle against the side of the Lexus to prevent the vehicle from moving, he removed the driver from the Lexus, and struggled to handcuff him. Sergeant Crovetto identified the defendant as the driver of the vehicle. A black Glock pistol and a black "beanie" were located inside the vehicle. Sergeant Crovetto testified that defendant was subsequently transported to the juvenile center.

Deputy Brian Kahrs, of the Jefferson Parish Sheriff's Office, testified that he joined the police pursuit of the white Lexus in this case. The video from his body camera was played for the jury. The video depicts Deputy Kahrs' arrival just after the vehicle crashed and three officers struggling to place the driver in handcuffs. The video depicts Deputy Kahrs using a taser on the defendant twice. Deputy Kahrs explained that he used the taser because the defendant did not comply with commands to put his hands behind his back. Deputy Kahrs identified the defendant as the driver of the vehicle.

---

seat of the vehicle. The defendant resisted and she assisted in handcuffing him. She and Officer Barnett then relocated to the carjacking scene to speak with the victims and witnesses.

Deputy Craig Toups, of the Jefferson Parish Sheriff's Office, testified that he "worked" the crime scene in this case. He recovered a 9 mm pistol, a magazine loaded with nine rounds of 9 mm ammunition, and some marijuana found inside of the Lexus.[8] The firearm and magazine were identified by Deputy Toups and admitted into evidence. The deputy noted that the firearm was a New Orleans police pistol.

## ASSIGNMENTS OF ERROR

1. The trial court abused its discretion by failing to order a pre-sentence investigation report in order to acquaint itself with the juvenile offender it was sentencing.

2. The trial court erred by failing to comply with the provisions of La. C.Cr.P. art. 894.1.

3. The trial court erred by imposing excessive sentences against this young first offender.

4. The trial court erred by denying the motion to reconsider sentence.

## LAW AND DISCUSSION

On appeal, the defendant argues that the sentences imposed are constitutionally excessive. The defendant contends that the trial court failed to consider the guidelines of La. C.Cr.P. art. 894.1 when sentencing the defendant and erred by failing to order a pre-sentencing investigation report (PSI report). Additionally, the defendant contends that the trial court erred in denying the motion to reconsider sentence.

The State responds that the trial court did not abuse its broad sentencing discretion and did not err in denying the motion to reconsider sentence on the ground of alleged excessiveness. The State asserts that the defendant's sentences, which are supported by the record, are mid-range, and he will be eligible for parole

---

[8] Deputy Todd Stremlau, of the Jefferson Parish Sheriffs Office, narrated the video of his body camera from the scene of the defendant's arrest. This video depicts the black handgun on the floorboard of the driver's side of the Lexus.

consideration upon meeting certain criteria after he has served twenty-five years. The State also asserts that since the argument regarding La. C.Cr.P. art. 894.1 was not raised below, the defendant is precluded from raising this issue on appeal. However, the State points out that the trial judge specifically noted that he considered the sentencing guidelines of La. C.Cr.P. art. 894.1. The State contends that the trial court has discretion in ordering a PSI report and the lack of such report does not impede a meaningful inquiry for purposes of parole.

The defendant was convicted of two counts of armed robbery. In response to the defense counsel's request for a PSI report, the trial judge stated, "[A]ccording to Article 875, it says it is in my discretion, I may or may not order it. I'm not going to order a PSI in this case. I'll note your objection for the record."

At the sentencing hearing on September 19, 2022, the trial court set forth detailed reasons for defendant's sentence, stating:

> It's a crime of violence, as defined by the Legislature, but we don't need the Legislature to tell us that in this particular case. When the defendant, Maurice Ervin, put a gun in Ms. Cowley's face, a gun with an extended clip, she knew it was a crime of violence.
>
> When Mr. Cowley reacted, as he did by grabbing the gun to point it away from his wife and himself, and when he was pushed down by the moving car as the defendant drove off with the car he was stealing and rolled over Mr. Cowley's leg, we all know it was a crime of violence.
>
> And by chance, Maurice Ervin is lucky Mr. Cowley was not injured worse. He could have sustained far more painful, permanent and perhaps even fatal injuries as a result of these senseless armed robberies that Maurice Ervin chose to commit.
>
> And I'd like to take note to the fact that the defendant, in a predatory fashion, waited for the husband to exit the car so the wife would be all alone and it would be easier for him to make her his prey.
>
> The crime was also done in broad daylight in front of people on a busy street thereby indicating that the defendant didn't care. Didn't care where he committed the crime, he was determined to commit the crime.

He also used a dangerous weapon, and not only a dangerous weapon, but it was loaded with cartridges, and I think at some point the testimony indicated that it was an extended magazine.

When he entered the car, he took the loaded weapon, with the extended magazine and pointed it at Ms. Cowley's temple. This poor woman was so frightened that she peed herself, she urinated on herself. That's how scared and terrified she was at the defendant's actions.

His actions that day could have killed more than one person. He could have even killed a bystander had the gun gone off. And I can't think of any fifteen-year olds or sixteen-year olds that I know that could act with such evil intent and such depravity for human life. He was fifteen in age, but he acted like a mature seasonal criminal that day.

\*\*\*

Additionally, I'd like to state for the record, that, after he took the car and ran over the victim, he fled the scene in a dangerous matter. He could have injured some of the other passengers and drivers of the other cars, some innocent bystanders. He could have run somebody over. When he takes this car and he drives it into the telephone pole, or some pole, he gets out and fights with the police.

\*\*\*

This is a serious crime and it deserves serious punishment, hopefully for rehabilitation purposes. Mr. Ervin is a young man with a long life ahead of him, but I said, this is a serious crime.

\*\*\*

The difference between an armed robbery and a first degree murder is the small amount of pressure needed to pull a trigger. When that happens, the law allows a sentence of death by execution. Thankfully, for all concerned, we're not confronting that situation today.

With all that said, I have to impose sentence on a fifteen-year old. He is now sixteen I believe. I've considered his age and I've considered the factors in Article 894.1.

The judge then sentenced defendant for each count to fifty years imprisonment at hard labor with a consecutive five-year hard labor sentence for the firearm enhancement. The sentences, including the firearm enhancements, were imposed without benefit of parole, probation, or suspension of sentence. The judge further ordered those sentences to run concurrently with each other. The defense counsel objected to the sentences.

On September 20, 2022, the defense counsel filed a motion to reconsider the sentence, arguing that the fifty-five-year sentences were excessive, considering the defendant's age, his lack of prior convictions, and the court's denial of a PSI report. Further, the defense counsel claimed that the firearm enhancement sentence was improper because the verdict sheet reflected that the jury did not determine that a firearm was used in this case. The defense counsel also contended that the court could not sentence a juvenile to a term of imprisonment without parole, citing to La. R.S. 15:574.4, which entitles a juvenile offender to parole at some point, making a sentence prohibiting parole is illegal.

At the hearing on the motion to reconsider sentence, held on October 13, 2022, the State conceded that the jury did not determine that a firearm was used in this case. The trial judge then vacated the five-year enhancement of defendant's sentences, explaining: "… I'm taking off the firearm enhancement, and I'm amending my sentence to the fifty on each count to run concurrent." The State noted that the defendant is eligible for parole after twenty-five years because he was a juvenile at the time of the offense under La. R.S. 15:574.4(J). The following exchange then occurred:

**The Court**: All right, well then that speaks for itself.

**Defense counsel**: Well, yeah, and I just wanted to make sure my bases were covered for any - for appeal purposes, Judge.

**The Court:** That's fine.

**Defense counsel:** So that's indicated in there. And then I'll just -

**The Court:** Well, if that's the law, then that's the law.

The trial judge denied the motion with respect to the excessiveness of the defendant's fifty-year sentences and concluded, "… his sentence is fifty years on each count to run concurrent with each other. The firearm enhancement has been vacated."

Although the record reflects that the defense counsel orally objected to the sentences and filed a written motion to reconsider sentence, the motion does not specifically raise the issue of the trial judge's lack of compliance with La. C.Cr.P. art. 894.1. When the specific grounds for objection to the sentences, including alleged non-compliance with La. C.Cr.P. art. 894.1, are not specifically raised in the trial court, then these issues are not included in the bare review for constitutional excessiveness, and the defendant is precluded from raising these issues on appeal. *See State v. Esteen*, 18-392 (La. App. 5 Cir. 12/19/18), 262 So.3d 1064, 1069, *writ denied*, 19-214 (La. 4/22/19), 268 So.3d 300; *State v. Francois*, 17-471 (La. App. 5 Cir. 3/14/18), 242 So.3d 806, 819, *writ denied*, 18-530 (La. 2/11/19), 263 So.3d 898. As such, to the extent that the defendant argues that the trial judge failed to articulate his reasons for sentencing pursuant to La. C.Cr.P. art. 894.1, the defendant is precluded from raising such an issue on appeal.[9]

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Article I, § 20 of the Louisiana Constitution also prohibits cruel and unusual punishment but further explicitly prohibits excessive punishment. *State v. Diaz*, 20-381 (La. App. 5 Cir. 11/17/21), 331 So.3d 500, 519, *writ denied*, 21-1967 (La. 4/5/22), 335 So.3d 836. A sentence is considered excessive, even when it is within the applicable statutory range, "if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime." *State v. Dixon*, 17-422 (La. App. 5 Cir. 3/14/18), 241 So.3d 514, 523, *writ denied*, 18-542 (La. 2/11/19), 263 So.3d 415. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is disproportionate as to shock the court's sense of justice. *State v.*

---

[9] We note however, that the transcript shows that the trial court cited to La. C.Cr.P. art. 894.1 at sentencing.

*Ramirez*, 22-92 (La. App. 5 Cir. 11/2/22), 353 So.3d 902, 908; *Diaz*, 331 So.3d at 519.

A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion when imposing a sentence. *Diaz*, 331 So.3d at 519-20. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. *Diaz*, 331 So.3d at 520. The review of sentences under La. Const. art. 1, § 20 does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is most appropriate in a given case. *State v. Corea-Calero*, 22-117 (La. App. 5 Cir. 12/28/22), 355 So.3d 697, 701.

The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); *Corea-Calero*, *supra*. In reviewing a trial court's sentencing discretion, the reviewing court should consider the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes by the same court and other courts. However, there is no requirement that specific matters be given any particular weight at sentencing. *Diaz*, *supra*.

In this case, the defendant was convicted of two counts of armed robbery in violation of La. R.S. 14:64(B), which provides that: "Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence." Thus, the defendant's sentence of fifty years for each count of armed robbery falls in the middle of the sentencing range.

As to the nature of the crime, as well as the nature and background of the offender, the testimony and evidence at trial indicated that on February 12, 2022, the defendant entered the victims' vehicle without permission, while armed with a

loaded gun. The defendant pointed his gun at Mrs. Cowley's forehead, prevented Mrs. Cowley from retrieving her phone, and she was unable to exit the vehicle until her husband arrived. When Mr. Cowley opened the door to the vehicle, the defendant pointed the gun at him. Mr. Cowley reached into the vehicle, grabbing the barrel of the gun and pushed the gun away from him. The defendant began to back up the vehicle, and accelerated, throwing Mr. Cowley to the ground, and rolling over his foot. Mrs. Cowley escaped the fleeing vehicle. The Cowleys testified how frightening they were and how this robbery has affected them.

Trial testimony further established that Ms. Craig viewed these events, called 9-1-1, and followed the fleeing vehicle driven by the defendant. Several law enforcement officers testified that the defendant then engaged in a high-speed chase, driving off of the road and around other vehicles and at one point, traveling in the opposite direction of traffic, and placing the lives of numerous persons in jeopardy. The defendant crashed the vehicle into a utility pole and resisted arrest. A loaded Glock pistol, which was identified as a New Orleans Police Department weapon with an extended magazine clip, was found inside of the vehicle.

As the trial judge stated, the defendant's actions put the lives of numerous individuals at risk and showed a lack of regard for the safety of the victims and others. The record reflects that the trial judge considered the violent nature of the offense, the physical injury to Mr. Cowley and the emotional injury caused to the victims, and the damage caused to the victim's vehicle. Contrary to the defense counsel's assertions, at sentencing, the judge did consider defendant's young age but also pointed out that he acted with "evil intent" and "depravity for human life." The record further reflects that the defendant was "serving other time" at the time of this conviction.

The third factor in review of a sentence for constitutional excessiveness requires consideration of sentences imposed for similar crimes by this Court and

other courts. "Although a comparison of sentences imposed for similar crimes may provide guidance, '[i]t is well settled that sentences must be individualized to the particular offender and to the particular offense committed.'" *State v. Boudreaux*, 11-1345 (La. App. 4 Cir. 7/25/12), 98 So.3d 881, 891, *writ denied*, 12-1907 (La. 11/9/12), 100 So.3d 841. While comparisons with other similar cases are useful and set the stage, the focus of sentence review remains on the character and propensities of the offender and the circumstances of the offense. *State v. LeBlanc*, 09-1355 (La. 7/6/10), 41 So.3d 1168, 1173.

A review of the jurisprudence reflects that courts have upheld similar sentences for similarly situated defendants convicted of armed robbery. In *State v. Honea*, 18-18 (La. App. 1 Cir. 12/21/18), 268 So.3d 1117, *writ not considered*, 19-598 (La. 8/12/19), 279 So.3d 915, the defendant was sentenced to forty-five years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence for his armed robbery conviction, and for the additional penalty of use of a firearm in the commission of the armed robbery, he was sentenced to five years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The sentences were ordered to run consecutively. *Id*. at 1119. On appeal, the defendant argued that his cumulative fifty-year sentence was excessive because he was only seventeen years old at the time of the offense, he was not the primary planner or major participant in the offense, and he would likely be confined for the remainder of his natural life. The first circuit found no abuse of discretion by the trial court, considering the nature of the crime and the fact that the imposed (cumulative) sentence was fifty-four years less than the statutorily allowed maximum sentences. *Id*. at 1120.

In *State v. Adams*, 53,055 (La. App. 2 Cir. 11/20/19), 285 So.3d 526, *writ denied*, 20-56 (La. 9/8/20), 301 So.3d 15, the defendant was sentenced to fifty years at hard labor for an armed robbery conviction and twenty-five years at hard

labor for the conspiracy to commit armed robbery conviction, both without benefit of parole, probation, or suspension of sentence, to run concurrently. *Id.* at 529. At trial, the testimony established that the victim was robbed by three young men after midnight, and that the defendant pulled a shotgun out of his pants leg, pointed the gun at the victim's head, and told him to get on the ground. The victim testified that the men took his cell phone, two hundred dollars in cash, and his debit card. *Id.* at 530. On appeal, counsel argued that the trial court failed to adequately consider mitigating factors, particularly that the defendant was seventeen years old at the time of the offense, his status as a first-felony offender, his drug abuse problem, and his expression of remorse. *Id.* at 533. The second circuit held that the record showed that the trial court thoroughly reviewed and applied the appropriate sentencing factors. The court of appeal found that the trial court considered the defendant's youth but balanced that factor against the severity of the offense and the pattern of violence exhibited by this young man. The court found that based on the record, the mid-range sentences imposed, although significant, did not shock the sense of justice. The court further found that it could not say the trial court abused its discretion in sentencing the defendant. *Id.* at 534.

Likewise, in this case, we find that the sentences imposed are not an abuse of discretion, do not shock the sense of justice, and are not constitutionally excessive. The Louisiana Supreme Court has recognized that the crime of armed robbery "creates a great risk of emotional and physical harm[.]" *State v. Celestine*, 12-241 (La. 7/2/12), 92 So.3d 335, 337 (*per curiam*). Further, this Court has recognized armed robbery as a "serious offense against the person." *State v. Rodas*, 15-792 (La. App. 5 Cir. 9/22/16), 202 So.3d 518, 528, *writ denied*, 16-1881 (La. 9/6/17), 224 So.3d 980; *State v. Bruce*, 10-121 (La. App. 5 Cir. 11/9/10), 54 So.3d 87, 97, *writ denied*, 10-2756 (La. 4/29/11), 62 So.3d 109. Here, as discussed above, the defendant entered Mr. Cowley's vehicle, pointed a loaded gun at Mrs.

Cowley's head, and prevented her from retrieving her cell phone. When Mr. Cowley returned, the defendant pointed the gun at him, they struggled over the gun, and the defendant quickly drove the vehicle away, forcefully knocking Mr. Cowley to the ground and running over his foot. The defendant then led police on a high-speed chase during which the defendant recklessly traveled off of the road, around other vehicles, and later in the opposite direction of traffic, almost hitting construction workers, and crashed into a utility pole. Despite his young age, the defendant's dangerous actions placed the life of the victims and numerous others at risk. The victims testified that they were fearful during the incident and that they were still affected by this robbery.

With regard to the defendant's argument that the trial court erred in failing to order a PSI report, we note that the law does not provide a defendant with an absolute right to a PSI report. Rather, a PSI report is an aid to the trial court and is ordered at its discretion. La. C.Cr.P. art. 875; *State v. Gatson*, 21-156 (La. App. 5 Cir. 12/29/21), 334 So.3d 1021, 1040-41.

Considering the serious nature of the defendant's actions, the sentences imposed in other cases, and the trial judge's detailed reasoning for the sentences, we find no abuse in the trial judge's wide discretion in imposing the two concurrent fifty-year sentences in this case. The sentences imposed are not constitutionally excessive and are supported by the record. For these reasons, we find no error in the trial court's denial of the defendant's motion to reconsider sentence or the request for a PSI report. These assignments of error are without merit.

## *PRO SE* ASSIGNMENT OF ERROR NUMBER ONE

Mr. Ervin "assigns as error the absence in the record of unanimous jury verdicts to establish his conviction pursuant to Ramos v. Louisiana --- U.S. --- S. Ct. 1390, 206 L. Ed.2d 583 (2020)."

**DISCUSSION**

In his *pro se* assignment of error, the defendant alleges that the record does not contain evidence of the unanimity of the jury verdict, and he requests that this matter be remanded to the trial court to determine whether the jury's verdicts were unanimous. The defendant concedes that he did not request polling but asserts he has standing because of "error patent review pursuant to *State v. Monroe*, 20-335 (La. 6/3/20), 296 So.3d 1062 (*per curiam*)."

*Monroe, supra,* held, "If the non-unanimous jury claim was not preserved for review in the trial court or was abandoned during any stage of the proceedings, the court of appeal should nonetheless consider the issue as part of its error patent review. *See* La. C.Cr.P. art. 920(2)." The scope of appellate review is limited to assigned errors as well as "an error that is discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence." *See* La. C.Cr.P. art. 920.

In his brief, as support to remand this matter to the district court, the defendant cites *State v. Norman*, 20-109 (La. 7/2/20), 297 So.3d 738, and *State v. Robinson*, 21-254 (La. App. 4 Cir. 2/18/22), 336 So.3d 567, 586, *writ denied*, 22-437 (La. 5/24/22), 338 So.3d 1185, *reconsideration not considered*, 22-437 (La. 9/7/22), 345 So.3d 430.

In *Norman*, *supra*, the defense requested polling, but polling was stopped after the first ten jurors. The matter was remanded to ascertain whether the verdict was unanimous. In *Robinson*, *supra*, the trial court asked the jury if there were at least ten jurors who agreed with the verdict, and the jury foreperson responded affirmatively. The record showed the jury was not polled, and polling was not requested. The appellate court, citing *Monroe*, *supra*; *Ramos v. Louisiana*, --- U.S. ---, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020); and *Norman*, *supra*, held "the Louisiana Supreme Court has directed appellate courts to consider non-unanimous

jury verdicts as part of the appellate courts' error patent review, even if a defendant did not preserve the claim for review or abandoned the claim at some stage of the proceedings."

All of the cases cited by the defendant in this case in support of his request for remand involved defendants whose conviction and sentence were not yet final at the time *Ramos, supra,* was decided. Hence, in those cases, it was necessary to determine whether the verdict was unanimous in order to determine whether the defendant was entitled to relief pursuant to *Ramos, supra*. The defendant in the case before us committed these crimes after the 2018 change in Louisiana law that requires unanimous jury verdicts for crimes committed after January 1, 2019. Thus, the cases cited by the defendant are distinguishable and do not require remand to address the unanimity of the jury's verdict.

The record indicates that after the verdict was returned, the following conversation occurred regarding polling:

| | |
|---|---|
| **The Court:** | Polling. |
| **Defense Counsel:** | No. |
| **The Court:** | You want to poll them? Do you want a polling, [the State]? |
| **The State:** | No, Judge. |
| **The Court:** | No polling. All right. |

La. C.Cr.P. art. 812 provides in part, "The court shall order the clerk to poll the jury if requested by the state or the defendant." In this case, both the defense and the prosecution declined polling when offered by the court. In order to preserve the right to seek appellate review of an alleged trial court error, the party claiming the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La. C.Cr.P. art. 841(A).

The record indicates that the trial judge instructed the jury that a unanimous verdict was required to convict the defendant and the defense counsel specifically declined to poll the jury. There is no evidence in the record before this Court to indicate that the verdict was not unanimous. As a court of record, we cannot review a claim that is not substantiated in the appellate record, nor review evidence that is not contained in the appellate record. *State v. Johnson*, 16-0259 (La. App. 4 Cir. 12/21/16), 207 So.3d 1101, 1103, *writ denied*, 17-0119 (La. 2/2/18), 233 So.3d 616.

In his *pro se* brief, the defendant goes on to argue that the trial court's methods used to expedite and reach the verdict did not meet the standards of Canon 1 of the Code of Judicial Conduct, which states that a judge shall uphold the integrity and independence of the judiciary. He contends that "railroading the proceedings merely to meet jurors [sic] obligations makes the verdict questionable." He argues that the verdict is questionable because of the court's "methods used to expedite and reach that verdict." In support of his argument, he cites to a portion of the trial transcript where he alleges the trial judge reassured "juror Austin K. Reed that the trial would not last so long as for him to miss taking his children on a planned vacation or for them to grow up hating the Judge in Gretna for it." He provides that after the verdict was returned, the judge said to the same juror, "Mr. Reed, your [sic] going to make that trip, see? I made sure of it."

The record reflects that *voir dire* began on September 13, 2022, after which a twelve-person jury, which included Austin K. Reeder,[10] and two alternates were selected. It appears defendant is referring to the following statement made by the judge to the jury before testimony on September 14, 2022:

> All right. Well, listen, let me just state with transparency, let me just say this to you: I was hoping that we could finish today, and I'm going to try and do that, however, I don't want to - I don't want to

---

[10] Throughout the record, the juror was referred to as Mr. Reed and Mr. Reeder; however, it appears his last name is "Reeder."

have to kill ourselves to do it, okay? We may have to come back tomorrow.

Mr. Reeder, you're going to be okay, all right? I assure you. I know that you voiced that opinion. I don't want your children to grow up to hate the judge in Gretna for missing a vacation. But we're going - I just don't want to kill ourselves. It's going to be a long day. You're going to see what it's like to have to sit there and pay attention. You're going to be exhausted by the end of the day, I can tell you. I go home sometimes after trial, and I'm exhausted, and my wife goes, What are you exhausted about, you're sitting down all day. You have to pay attention to this stuff and that requires a lot of concentration. So, if we do get done, we'll get done. If not, I don't want to overdo it, okay? We'll have to come back tomorrow morning and probably be done by lunch time, okay?

Later that same day, after the jury returned a verdict of guilty as charged on both counts, the judge informed the jury that they needed to go back into the jury room in order to receive certificates and letters for their employers. The judge then stated, "See, Mr. Reed, you're going to make that trip. See? I made sure of it."

The record does not show that the judge reassured Mr. Reeder that the trial would not last so long that he would miss his vacation. Contrary to the defendant's assertions, the record shows that the judge was *actually* informing the jury that the trial might not finish on that date and that they may have to come back in the morning. After the trial concluded and the verdict was reached, the judge told Mr. Reeder that he would make his trip.

After a thorough review of the record on appeal, we conclude that there is no evidence in this record to indicate that the jury's verdicts were improper or non-unanimous. As stated *supra*, Louisiana law does not require polling in criminal cases under La. C.Cr.P. art. 812. *See State v. Alexander*, 21-1346 (La. App. 1 Cir. 7/13/22), 344 So.3d 705, 724. Accordingly, this *pro se* assignment of error is without merit.

## ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

As discussed above, on September 19, 2022, the trial court sentenced the defendant for each count to fifty years imprisonment at hard labor with a consecutive five-year hard labor sentence for the firearm enhancement pursuant to La. R.S. 14:64.3(A). The judge ordered that both sentences, including the firearm enhancements, be served at hard labor and without the benefit of parole, probation, or suspension of sentence, as depicted in the transcript, the sentencing minute entry, and the State of Louisiana Uniform Commitment Order (UCO) from September 19, 2022.

At the motion to reconsider sentence hearing held on October 13, 2022, the trial court vacated the portion of sentences on each count to delete the consecutive five-year hard labor sentence for the firearm enhancements, and a sentencing minute entry and UCO were created to reflect the deletion of the consecutive five-year sentences. However, the minute entry and UCO dated October 13, 2022 do not reflect that the consecutive sentences imposed are to be served at hard labor and without the benefit of parole, probation, or suspension of sentence. The only element of the sentences in this case that was changed on October 13, 2022, was the deletion of the five-year firearm enhancements. Although the requirement that the sentence be served at hard labor and the restriction of benefits required by La. R.S. 14:64 are self-activating, we remand this matter to the trial court to correct the sentencing minute entry and UCO dated October 13, 2022, to reflect that the sentences are to be served at hard labor and without the benefit of parole,

probation, or suspension of sentence.[11] *See State v. Bardell*, 17-274 (La. App. 5 Cir. 11/15/17), 232 So.3d 82, 89-90 (where this Court noted that while the statutory restriction of benefits is self-activating, it nonetheless remanded for correction of the sentencing minute entry and UCO to reflect the correct restriction of benefits); *State v. Jaufre*, 14-259 (La. App. 5 Cir. 10/29/14), 164 So.3d 888, 890 (citations omitted) (where this Court ordered that the matter be remanded and the UCO be corrected to ensure an accurate record and to reflect that the defendant's sentence is to be served without benefit of parole, probation, or suspension of sentence, despite the self-activating nature of these restrictions).

## CONCLUSION

For the foregoing reasons, the defendant's conviction and sentence are affirmed. This matter is remanded for the limited purpose of correcting the October 13, 2022 minute entry and UCO to state that the sentences are to be served at hard labor and without the benefit of parole, probation, or suspension of sentence.

**SENTENCE AND CONVICTION
AFFIRMED; MATTER REMANDED**

---

[11] Because the defendant was under the age of eighteen at the time of the commission of these offenses, he will be eligible for parole consideration pursuant to La. R.S. 15:574.4(J), upon serving at least twenty-five years of his sentences and satisfaction of certain criteria.

STATE OF LOUISIANA                    NO. 23-KA-11

VERSUS                                FIFTH CIRCUIT

MAURICE ERVIN                         COURT OF APPEAL

                                      STATE OF LOUISIANA


**<u>JOHNSON, J., CONCURS WITH REASONS</u>**

I concur with the majority opinion.  However, I write separately to express my thoughts on whether the trial court should have ordered a presentence investigation ("PSI") report.  While a PSI report is an aid to the trial court and is ordered at its discretion[12], I opine that a PSI could have been a great resource to the trial court, in addition to the underlying facts of the case, when sentencing the 15-year-old defendant in this matter.

---

[12] *State v. Gatson*, 21-156 (La. App. 5 Cir. 12/29/21), 334 So.3d 1021, 1041.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 30, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-KA-11

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)      THOMAS J. BUTLER (APPELLEE)      GWENDOLYN K. BROWN (APPELLANT)

### MAILED
MAURICE ERVIN #772868 (APPELLANT)
DIXON CORRECTIONAL INSTITUTE
P. O BOX 788
JACKSON, LA 70748

HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
KRISTEN LANDRIEU (APPELLEE)
STEPHEN DOWNER (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053