STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-846


STATE OF LOUISIANA

VERSUS

MARK I. GORDON
AKA MARK GORDON


**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 15-3799
HONORABLE KATHY JOHNSON, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and Candyce G. Perret, Judges.

**AFFIRMED.**

**Marty L. White**
**Terri R. Lacy**
**Assistant Attorneys General**
**Post Office Box 94005**
**Baton Rouge, LA   70804-9005**
**(225) 326-6200**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**Post Office Box 2125**
**Lafayette, LA   70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Mark I. Gordon**

**AMY, Judge.**

The defendant was charged with three counts of vehicular homicide and one count of first degree vehicular negligent injuring. The defendant entered a guilty plea to three counts of vehicular homicide, and the State dismissed the negligent injuring charge. The trial court sentenced the defendant to eighteen years for each count of vehicular homicide, with the sentences to run consecutively. The defendant appeals. For the following reasons, we affirm.

### Factual and Procedural Background

Trooper Brennon Russell[1] of the Louisiana State Police testified that, on October 1, 2015, he received a call on his police radio reporting a vehicular accident on U.S. Highway 84 near Wildsville, Louisiana. He explained that, upon arriving at the scene, he observed a pickup truck in a ditch and a tractor-trailer, which he described as a "log truck . . . that was off in the ditch as well with the back of the log truck laid over." Trooper Russell stated that three passengers from the truck were pronounced dead at the scene. Officers determined that the victims were a father, Richard Stewart, his teenage daughter, Vera, and his teenage son, George. A fourth passenger from the truck was transported from the scene to receive medical treatment.

The police report states that the tractor-trailer was traveling at approximately 68 miles per hour when it crossed the centerline and struck the truck. Trooper Russell testified that, in the course of investigating the accident, he spoke to witnesses, including several people who told him that they had telephoned 911 to report the tractor-trailer prior to the accident. In particular, Trooper Russell recalled

---

[1] We note that Trooper Russell's first name is spelled elsewhere in the record as "Brennen." However, we will use the spelling "Brennon" as it is consistent with the transcript.

the statement of one witness, who told him that she had been behind the tractor-trailer for approximately ten to fifteen minutes before the accident:

> [She] stated that she was behind the truck. Said that several vehicles had actually went around the truck in opposite lanes and also through the ditch to avoid hitting the truck head-on. She stated that the truck had been all over the road for quite some time and that she had called 911[.]

Trooper Russell testified that, during his investigation, he located the driver of the tractor-trailer, whom he identified as Mark Gordon. Trooper Russell described the conversation that he had with Mr. Gordon:

> When I spoke to Mr. Gordon . . . I asked him if he knew what was going on? He didn't know what was going on. He said he thought he just ran off the road. He was sweating and he couldn't concentrate on talking to me. He was talking about several other things and he was running around . . . he couldn't sit still. He couldn't talk to me straight . . . he didn't even realize what had happened is what I should say.

In the police report, Trooper Russell details that "[Mr.] Gordon admitted to using Methamphetamine the day prior to the crash." The police report further states that Master Trooper Linda Vachula transported Mr. Gordon from the accident scene to the Concordia Parish Sheriff's Office, where he submitted to a urinalysis. The sample was given to the Louisiana State Police Crime Laboratory, which issued a scientific analysis report that states: "Amphetamine and Methamphetamine were detected in the specimen of urine labeled Mark I. Gordon."

The State filed a bill of information charging the defendant, Mark Gordon, with three counts of vehicular homicide, violations of La.R.S. 14:32.1, and one count of first degree vehicular negligent injuring, a violation of La.R.S. 14:39.2. The defendant entered a guilty plea to three counts of vehicular homicide pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970), and the State agreed to dismiss the negligent injuring charge. The plea was considered an "open ended

2

plea," such that the defendant received no guarantee regarding the length of his sentences.

Subsequently, a sentencing hearing was held, and the trial court reviewed the general sentencing guideline factors found in La.Code Crim.P. art. 894.1(A), stating:

> Article 894.1 states when a defendant has been convicted of a felony, the Court should impose a sentence of imprisonment, if any of the following occurs: number one) there's an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime. On that one I'm not sure that Mr. Gordon would commit another crime. I believe he probably would seek treatment and not use drugs after this particular offense. Number two) the defendant is in need of correctional treatment or custodial environment that can be provided most effectively by his commitment to an institution. Now, my answer to that is, yes. I believe he should be committed to an institution, because, he's in need of correctional treatment. And number three) a lesser sentence would deprecate the seriousness of the defendant's crime. The answer to that is, yes. To release Mr. Gordon on probation would indeed not be the proper thing to do. There have been three deaths that resulted from his action.

Next, the trial court discussed the general sentencing guideline factors found in La.Code Crim.P. art. 894.1(B). Although the guideline factors do not control the trial court's discretion, they "shall be accorded weight in its determination of suspension of sentence or probation[.]" In reviewing the factors, the trial court stated:

> Number one) the defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim. No. I don't think there was any deliberate cruelty in this particular instance. Number two) the offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability or ill health. My answer to that is no. That was not the type of crime that was committed. It was not a crime committed against the person. Number three) the offender offered or has been offered or has given or received anything of value for the commission of the offense. Once again, the answer to that is no. Number four) the offender used his or her position or status to facilitate the commission of the offense. The answer to that is no. Number five) the offender knowingly created a risk of death or bodily

harm to more than one person. The Court finds the answer to that is yes. The defendant, he knowingly created a risk of death or great bodily harm to others when he used drugs and he got behind the wheel and drove on a highway where other people were going to be traveling. Drugs effect [sic] your judgment and they also effect [sic] your reaction time when you're driving. Number six) the offender used threats of or actual violence in the commission of the offense. The answer is no. Number seven) subsequent to the offense, the offender used or caused others to use violence, force or threats with the intent to influence the institution conduct or outcome of the criminal proceedings. The answer to that is no. Number nine) the offense resulted in a significant permanent injury or significant economic loss to the victim or his family. The answer to that certainly is yes. His conduct resulted in the death of three people. In fact, my understanding they were all from one family and it caused significant economic loss to the family of each victim. Mr. Richard Stewart, as I understand was the driver and was the father of the two teenagers that were killed. And he leaves behind, I noted -- I think with whom he lived, but was not married. He left behind someone that cared for him that was depending on him to support them. Number ten) the offender used a dangerous weapon in the commission of the offense. The answer is no. Number eleven) the offense involved multiple victims or incidences [sic] for which separate sentences have not been imposed. In this instance there are multiple victims and there will be separate sentences that are to be imposed pursuant to the statute. The statute reads as follows: in 14:32.1 relative to vehicular homicide. Subsection D provides that if the offense for which an offender is convicted approximately [sic] or directly causes the death of two or more human beings, the offender shall be sentenced separately for each victim and each sentence shall run consecutively. Number twelve) the offender was persistently involved in several offenses not already considered his [sic] criminal history as part of the multiple offender adjudication. The answer to that is no. Number thirteen) the offender was a leader or his violation was in concert with one or more other persons with respect to whom the offender occupied a position of organizer a supervisory position or any other position of management. The answer to that is no. Number fourteen) the offense was a major economic offense. The answer to that is no. It was not motivated by money. Number fifteen) the offense was a controlled dangerous offense and the offender obtained substantial income or resources from ongoing drug activities. The answer to that is no. Mr. Gordon was not involved in selling of drugs when this occurred. Number sixteen) the offense was a controlled substance offense in which the offender involved juveniles and the trafficking or distribution of drugs. The answer to that is no. Seventeen) the offender committed the offense in furtherance of a terrorist action. The answer to that is no. Eighteen) the offender foreseeably endangered human life by discharging a firearm during the commission of the offense which has as an element the use, attempted use, or threaten[ed] use of physical force against the

4

person or property of another in which by its very nature involves a substantial risk that physical force may be used in the course of committing the offense. The answer to that is no. Number nineteen) the offender used a firearm or other dangerous weapon while committing or attempting to commit an offense which has as an element the use, attempted use, or threaten[ed] use of physical force against the person or property of another in which by its very nature involves a substantial risk that physical force may be used in the course of committing the offense. The answer to number nineteen is no. Number twenty) the offender used a firearm or other dangerous weapon while committing or attempting to commit a controlled dangerous substance offense. The answer to that is no. Any other aggravating circumstances: I don't think there were any other aggravating circumstances involved. Number twenty-two) the defendant's criminal conduct neither caused nor threatened serious harm. The answer to that is yes, because, we've got three deaths. . . . [T]wenty three. The defendant did not contemplate that his criminal conduct would cause or threaten serious harm. I don't believe he actively contemplated, because he was under the influence of drugs at the time it occurred. But, . . . a normal person that used drugs would have considered how his conduct would effect [sic] others. Number twenty-four) the defendant acted under strong provocation. The answer to that is no. Twenty-five) there were substantial grounds tending to excuse or justify the defendant's criminal conduct . . . though failing to establish defense. The answer to that is no. Number twenty-six) the victim of the defendant's criminal conduct inducted [sic] or facilitated its commission. The answer to that is no. We've got three innocent victims that had no participation in the offense. Number twenty-seven) the defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury he sustained. Well, in this particular instance he cannot compensate. He cannot bring back three individuals who died. Number twenty-eight) the defendant has no history of prior delinquency or criminal activity or has led a law abiding life for a substantial period of time before the commission of the instant crime. The answer to that is yes, according to the pre-sentence [report]. Twenty-nine) the defendant's criminal conduct was the result of circumstances unlikely to re-occur. At this point, as I stated previously, I don't believe Mr. Gordon would use drugs and drive again. Number thirty) the defendant is particularly likely to respond affirmatively to probationary treatment. Well, he probably would. But, because of the seriousness of the offense I think it would be improper to place Mr. Gordon on probation. Thirty-one) the imprisonment of the defendant would entail excessive hardship to himself or his dependents. I know he has a seven year old and a wife and it will cause some hardship. But, I don't think it would be excessive hardship. I believe that his wife could become employed and she can always call upon her relatives to assist her and the child. Number thirty-two) the defendant has voluntarily participated in a pre-trial drug testing program. That's not applicable in this particular

situation. And number thirty-three) and other relevant mitigating circumstances and the Court's not informed of any other mitigating circumstances. The Court has considered the fact that he admitted using crystal meth; began using at the age of 28; and, admitted that he's used it as often as every other day. Subsequent to the accident a urine sample was taken from the defendant and it indicated that in his system he had methamphetamines and amphetamines. The witnesses to the accident stated that the vehicle driven by Mr. Gordon, which was a Peterbilt truck pulling a tractor carrying logs, had crossed the center line several times prior to the wreck which caused the death of Mr. Richard Stewart, Vera Stewart and George Stewart. Two vehicles had had to leave the lane of traffic, one going into the ditch to avoid being hit by Mr. Gordon. Once again, one witness stated that Mr. Gordon's vehicle had gone into the other lane of traffic for on and off for about 15 minutes. Law enforcement had been called to come stop Mr. Gordon, but unfortunately, they did not make it to him to stop him before this accident. We've got two teenagers in the back of the Dodge truck that were ejected and killed. A 17 year old. Vera was 17. George was 15. They essentially are innocent victims. They did nothing wrong that resulted in their death. Richard Stewart, the driver, was 49 years old. Once again, the court's informed that all three of the victims were from the same family. So, Mr. Gordon, essentially, wiped out almost the entire family. But for using methamphetamine, which impaired the defendant's mood, his judgment, his ability to respond while driving, the Stewart family would still be here. When someone uses drugs and then gets behind the wheel of a vehicle and operates it, he knowingly creates a risk of death and great bodily harm to the members of the public who are driving or riding in vehicles. This offense was directly caused by defendant's criminal conduct. He cannot right the wrong that's been committed. He cannot pay restitution, because, restitution money will be inadequate.

Ultimately, the trial court sentenced the defendant to eighteen years at hard labor, three years of which is to be served without benefit of probation, parole, or suspension of sentence, on each count of vehicular homicide. The trial court ordered that the sentences be served consecutively. The defendant filed a motion to reconsider the sentences, and the trial court denied the motion. The defendant now appeals, asserting the following assignment of error: "Mark Gordon's three consecutive eighteen-year sentences for vehicular homicide are excessive."

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent. An error patent is one which is "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La.Code Crim.P. art. 920(2). Upon review, we find that there is an error patent regarding the sentences imposed. Louisiana Revised Statutes 14:32.1(B) provides, in pertinent part:

> Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years. At least three years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. . . . The court shall require the offender to participate in a court-approved substance abuse program[.]

On each of the sentences, the trial court failed to impose the fine and the court-approved substance abuse program as required by La.R.S. 14:32.1. Thus, the sentences are illegally lenient. However, the parties have not raised the issue of the sentences being illegally lenient. *See State v. Celestine*, 11-1403 (La.App. 3 Cir. 5/30/12), 91 So.3d 573; *State v. Jacobs*, 08-1068 (La.App. 3 Cir. 3/4/09), 6 So.3d 315, *writ denied*, 09-755 (La. 12/18/09), 23 So.3d 931. Accordingly, we turn to consideration of the defendant's assigned error.

*Excessive Sentences*

As discussed above, the defendant pled guilty to three counts of vehicular homicide, in violation of La.R.S. 14:32.1, and was sentenced to eighteen years at hard labor, three years of which is to be served without benefit of probation, parole, or suspension of sentence, on each count, with the sentences to run consecutively.

In his only assignment of error, the defendant contends that his three consecutive eighteen-year sentences for vehicular homicide are excessive. In briefing to this court, the defendant argues that his sentences are excessive because he had never been in any type of criminal trouble prior to the accident; had no driving violations that showed a history of reckless driving; cooperated with the police officers at the scene of the accident; expressed remorse to the victims' family; and spared the victims' family from having to put forth arguments regarding causation and intoxication. The defendant contends that he does not need to be incarcerated to ensure the public's safety and asserts: "[T]he trial court made clear its hard labor sentence was based purely on the *impact* of this accident. The court did not factor in the safety to the community going forward despite stating [Mr. Gordon] was likely a good candidate for probation, but for 'the seriousness of the offense.'"

Regarding excessive sentence claims, a panel of this court has stated:

> A sentence may be excessive, even if it falls within the statutory guidelines, "if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict pain and suffering." *State v. Oliphant*, 48,998 (La.App. 2 Cir. 4/9/14), 137 So.3d 142, 144. In *State v. Thomas*, 08-1358 (La.App. 3 Cir. 5/6/09), 18 So.3d 127, 130, this Court stated the standard of review for an excessiveness claim:

>> The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of discretion. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and therefore, is given broad discretion in sentencing. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion.

> In reviewing the trial judge's sentencing decision there are three factors to be considered: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. *State v. Morris*, 10-

1278 (La.App. 3 Cir. 5/4/11), 63 So.3d 389, 391. Although comparison with other cases is an element of sentence review, "the focus of sentence review remains on the character and propensities of the offender and the circumstances of the offense." *State v. LeBlanc*, 09-1355 (La. 7/6/10), 41 So.3d 1168, 1173.

*State v. Bennett*, 16-432, pp. 4-5 (La.App. 3 Cir. 12/7/16), 208 So.3d 898, 901.

Nature of the Crime

We begin by considering the nature of the crime. The sentencing range for vehicular homicide is found in La.R.S. 14:32.1, which provides, in pertinent part: "Whoever commits the crime of vehicular homicide . . . shall be imprisoned with or without hard labor for not less than five years nor more than thirty years. At least three years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence." Concerning the nature of the offense, a panel of this court has stated:

> The crime at issue here is vehicular homicide, which carries a maximum sentence of thirty years at hard labor. La.R.S. 14:32.1. In 2004, the legislature increased the maximum penalty for vehicular homicide from twenty years to thirty years, demonstrating its intent to convey the serious nature of this crime. *State v. Morain*, 07-1207 (La.App. 3 Cir. 4/2/08), 981 So.2d 66. Then, in 2006, the minimum penalty for vehicular homicide was increased from two years to five years at hard labor, and the minimum number of years required to be imposed without benefit of probation, parole, or suspension of sentence was increased from one year to three years, further evidencing the legislature's intent to convey the seriousness of this offense.

*State v. Franco*, 08-1071, pp. 4-5 (La.App. 3 Cir. 4/1/09), 8 So.3d 790, 793, *writ denied*, 09-1439 (La. 2/12/10), 27 So.3d 843. The legislature amended La.R.S. 14:32.1 again in 2014 to add subsection (D), which provides, in pertinent part:

> Notwithstanding the provisions of Code of Criminal Procedure Article 883, if the offense for which the offender was convicted pursuant to the provisions of this Section proximately or directly causes the death of two or more human beings, the offender shall be sentenced separately for each victim, and such sentences shall run consecutively.

9

In this case, the offense resulted in the deaths of a forty-nine-year-old man, his seventeen-year-old daughter, and his fifteen-year-old son. As the trial court observed, "all three of the victims were from the same family. So, [the defendant] essentially, wiped out almost the entire family. But for using methamphetamines, which impaired the defendant's mood, his judgment, his ability to respond while driving, the . . . family would still be here."

Nature and Background of the Offender

Next, we consider the nature and background of the offender. At the sentencing hearing, the trial court described the defendant as follows:

> Mr. Gordon has no juvenile record nor no adult record prior to this particular wreck. So up to that day he was a law abiding citizen. . . . Mark Isiah Gordon was born July 13, 1987 . . . . He . . . completed the 8th grade before dropping out in his 9th grade year. . . . Mr. Gordon dropped out of the school system to go to work and advised much of his life has been oil field employment. However, at the time of the incident [sic] offense, he was employed driving a log truck due to lack of work suffered by many in the oil field at that time. He married . . . on June 6, 2009 and this marriage has produced one child, a son, who is now seven years of age. Mr. Gordon began experimenting with marijuana use around 16 years of age and started only using it occasionally. He denied marijuana use ever being a type of problem with him and used very little during these years. Mr. Gordon began using methamphetamine at the age of 28 and admitted he's used it as often as every other day. He has never received any type of inpatient or outpatient treatment for this use.

Sentences Imposed for Similar Crimes

Last, we consider sentences imposed for similar crimes. In *Bennett*, 208 So.3d 898, the defendant pled no contest to one count of vehicular homicide and was sentenced to twenty years at hard labor, with eight years suspended and five years of supervised probation. At the time of the offense, he had oxycodone, amphetamine, and methamphetamine in his system. The defendant alleged that his sentence was excessive because he was not among the most egregious and

10

blameworthy offenders; he took accountability for his actions on the day of the accident; he cooperated with law enforcement; and he exhibited a sense of remorse. The trial court found that a previous drug possession charge and prior drug use were aggravating factors; that the defendant's continual drug use created an undue risk that he might commit another crime during a period of suspended sentence; that a lesser offense would deprecate the seriousness of the offense; and that the defendant's drug use created a risk of great bodily harm or death to more than one person. After comparing the defendant's sentences to similar cases, a panel of this court affirmed the defendant's sentence and concluded that the defendant failed to show that the trial court abused its discretion.

In *State v. Matt*, 11-1539 (La.App. 3 Cir. 6/6/12), 91 So.3d 1252, the defendant was convicted of one count of vehicular homicide and sentenced to twenty years at hard labor, the first ten years to be served without benefit of probation, parole, or suspension of sentence. A panel of this court concluded that the sentence was not an abuse of the trial court's discretion.

In *State v. Ellis*, 10-1019 (La.App. 5 Cir. 5/24/11), 67 So.3d 623, *writ denied*, 12-1055 (La. 9/28/12), 98 So.3d 830, the defendant was convicted of two counts of vehicular homicide and sentenced to twenty-five years at hard labor on each count, to run concurrently.[2] At the time of the offense, the offender was under the influence of marijuana. The fifth circuit affirmed the sentences even though the defendant was a first felony offender.

---

[2] We note that at the time *Ellis* was decided, La.R.S. 14:32.1 did not yet contain the requirement in subsection (D) that "if the offense . . . directly causes the death of two or more human beings, the offender shall be sentenced separately for each victim, and such sentences shall run consecutively."

Considering the nature of the crime, the nature and background of the defendant, sentences imposed for similar crimes, and the trial court's evaluation of the factors set forth in La.Code Crim.P. art. 894.1, we conclude that the defendant has failed to demonstrate that his sentences are unconstitutionally excessive. Furthermore, we note that La.R.S. 14:32.1(D) requires that the defendant's sentences be served consecutively.

## DECREE

For the foregoing reasons, the sentence of the defendant, Mark I. Gordon, of eighteen years at hard labor, three years of which is to be served without benefit of probation, parole, or suspension of sentence, on each of three counts of vehicular homicide, to be served consecutively, is affirmed.

**AFFIRMED.**