STATE OF LOUISIANA              \*        NO. 2023-KA-0591

VERSUS                       \*        COURT OF APPEAL

TASHONTY C TONEY         \*        FOURTH CIRCUIT

                                     \*        STATE OF LOUISIANA

                                     \*

                                     \*

                        \* \* \* \* \* \* \*

TFL

**LOVE, C.J., DISSENTS IN PART AND CONCURS IN PART WITH REASONS**

I agree with the majority to affirm the sentences imposed arising out of Mr. Toney's first degree negligent injuring offenses. However, I find the maximum thirty-year sentences imposed on each count of the two vehicular homicide sentences, including fifteen years each without benefit of parole, probation, or suspension of benefits ("benefits"), are excessive and would remand for resentencing. Accordingly, I respectfully dissent in part for the reasons that follow.

The majority sets forth the standard to evaluate excessive sentence claims and notes that appellate courts apply a two-pronged approach for such an evaluation: (1) whether the trial court considered the La. C.Cr.P. art. 894.1 sentencing guidelines; and (2) whether the sentence is constitutionally excessive. *See State v. Edison*, 37,012, pp. 2-3 (La. App. 2 Cir. 5/14/03), 847 So.2d 140, 142-43. I agree with the majority that the trial court complied with the first prong of an excessive sentence review—consideration of the La. C.C.P. art. 894.1 statutory sentencing guidelines prior to the imposition of the sentences. However, as to the second prong, I reach a different result in considering whether the vehicular homicide sentences were excessive. Upon application of the three factors

1

enunciated in *State v. Whatley*, 2006-316, p. 5 (La. App. 3 Cir. 11/2/06), 943 So.2d 601, 605: the nature of the crime, the defendant's background and comparison of the sentence imposed to similar crimes, I find the vehicular homicide sentences are constitutionally excessive for the following reasons.

<u>Nature of the Crime</u>

The nature of the crime involved herein is vehicular homicide. The Supreme Court, in *State v. LeBlanc*, 2009-1355, pp. 9-10 (La. 7/6/10), 41 So.3d 1168, 1173, discussed the legislative history of the sentencing ranges for vehicular homicides as follows:

> Over the years, the legislature has steadily increased punishment for the crime, raising the maximum sentence to 15 years imprisonment in 1989 La. Acts 584, then to 20 years imprisonment, with or without hard labor, in 1999 La. Acts 1103, and thereafter, to its present maximum of 30 years imprisonment with or without hard labor. 2004 La. Acts 750. The legislature has since increased the mandatory minimum term of imprisonment from two to five years and increased the minimum term of parole disability from one to three years. 2006 La. Acts 294. The changes reflect the growing awareness in this state and elsewhere of the carnage caused by intoxicated drivers on the open road. *Cf. Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 451, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990)("No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it. Media reports of alcohol-related death and mutilation on the Nation's roads are legion.").

Another indicator of the legislature's steadily increased punishment for vehicular homicide offenders is the offender's receipt of consecutive sentences as outlined in La. R.S. 1432.1(D) for causing the deaths of two or more human beings in the same incident. Other penal provisions reflecting enhanced punishment include that offenders with a blood alcohol concentration ("BAC") of 0.15 percent are required to serve at least five years of the sentence without benefits as opposed to three years without benefits for a lesser BAC, and an offender with a BAC of 0.20 percent shall be convicted of a crime of violence. *See* La. R.S. 14:32.1(B) and La.

R.S. 14:32.1(C).[1]  Relatedly, La. R.S. 15:574.4(A)(1)(b)ii states, in part, that an offender convicted of a crime of violence who is otherwise eligible for parole, "shall be eligible for parole consideration upon serving sixty-five percent of the sentence imposed."   Here, Mr. Toney was impaired with a high BAC of at least 0.20 percent when he caused the fatal accident.

In determining that the nature of the offense supports the maximum sentences imposed, the majority focuses on the trial court's finding that Mr. Toney's conduct in the commission of the offenses manifested "deliberate" cruelty to the victims and was, therefore, properly considered as an aggravating factor in sentencing.  The majority notes that the trial court emphasized that Mr. Toney drove at an excessive rate of speed, attempted to flee, and did not render first-aid.  Clearly, Mr. Toney's offenses were horrific, caused immeasurable devastation to the victims' families and loved ones, and unfairly cut short the lives of two outstanding, promising individuals.  However, while there is no dispute that the results were cruel, the trial court pointed to no evidence that Mr. Toney deliberately intended the results. Although Mr. Toney's conduct can rightfully be condemned as abhorrent to any sober-minded person, regrettably, Mr. Toney was "blind drunk" at the time of the offense.  Accordingly, unlike the majority, I do find an inherent contradiction in the trial court's finding of deliberate cruelty juxtaposed against the court's finding that "[it] considered as mitigating [that] the defendant did not contemplate that his criminal conduct could cause this serious harm."

---

[1]La. R.S. 14:32.1(B) provides, in part, that "[i]f the operator's blood alcohol concentration is 0.15 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence."

La. R.S. 14:32.1(C) states that "[w]hoevever commits the crime of vehicular homicide shall be sentenced as an offender convicted of a crime of violence if the offender's blood alcohol concentration, at the time of the offense, exceeds 0.20 percent by weight based on grams of alcohol per one hundred cubic centimeters of blood.

As referenced, although our statutory provisions have steadily increased the penalties for vehicular homicide, notwithstanding, the sentencing range is five to thirty years for each offense. This writer recognizes that no sentence can offer adequate relief or comfort for the surviving families and loved ones of the victims. Nevertheless, a vehicular homicide excessive sentence claim is still entitled to review within the statutory sentencing range for that offense. That review necessarily requires appellate courts to apply the seminal precepts that maximum sentences are reserved for the most serious offender and that there should be some consistency when imposing maximum sentences. *See State v. Morain*, 2008-1546, p. 6 (La. App. 3 Cir. 6/30/09), 11 So.3d 733, 738.

Defendant's Nature and Background

The review of the second factor—the offender's nature and background—substantiates that Mr. Toney had no prior criminal convictions; however, as noted by the trial court and the majority, Mr. Toney did have a criminal history which included a previous 2016 DWI citation. In connection with that citation, Mr. Toney's uncontradicted testimony asserted that he fulfilled all the requirements associated with the citation—which did not include attendance at AA meetings.

The majority indicates that Mr. Toney "knew" he had a drinking problem. However, while Mr. Toney acknowledged a drinking problem at sentencing, he testified that he lacked the self-awareness to realize he had a drinking problem at the time of the accident. Mr. Toney testified that "I wish back then I would have realized what it was, and learned my lesson, you know got everything under control. My mental health and everything under control, but I didn't realize that then. I didn't realize where I stand now." He averred that he rarely "partied" at the time of the accident because he worked all the time, and the accident date—his birthday—"was the one day that I got in my head, just relax and this is what

4

happened." Mr. Toney relayed that he has attended AA since his incarceration and had not drank in three years.

Defendant's background also showed that Defendant was gainfully employed. He was described as an honest, reliable, and trustworthy by his supervisor, aunt, and co-workers. Defendant also served as his mother's caretaker and acted as a father figure to a nephew and nieces. Defendant accepted responsibility for his actions by entering a "blind" guilty plea and expressed great remorse at the sentencing hearing for his actions on the accident date.

The majority rejects Mr. Toney's contention that his overall law-abiding background was not considered by the trial court in his sentencing on the vehicular homicide counts, citing the horrific nature of the offenses. Nevertheless, as noted by the majority, the three-part test in reviewing a claim for the imposition of the maximum sentence requires consideration of all the factors in determining an excessive sentence. *See State v. Smith*, 1999, pp. 17-18 (La. 7/6/00), 766 So. 2d 501, 514. This review necessarily includes evaluation of the offender's nature and background. Thus, the "horrific nature" of the offense cannot preclude consideration of the offender's background in imposition of the maximum sentence; otherwise such a review would never take place as inevitably all vehicular homicides offenses involving impaired drivers are of a "horrific nature" and devastate the surviving family members and loved ones.

In totality, as discussed further herein below, I find Mr. Toney's background does not qualify as the worst offender for whom the maximum sentence is reserved when compared to other convicted multiple homicide offenders.

*Comparative Sentences*

This Court emphasized in *Toney I*, 2021-0131, p. 9. 331 So.3d at 403, that comparison of sentences is an important factor in reviewing a claim for excessiveness as "[s]uch a comparison helps to assure that a defendant's sentence will be

5

proportional in comparison with other offenders—that the maximum sentences will be reserved for the most egregious or blameworthy of offenders, and that others of similar conduct will not receive sentences lighter than the defendant's." *Id.*, 2021-0131, p. 9, 331 So.3d at 403-4. Moreover, a reviewing court's consideration of sentences imposed by other courts provides consistency in the punishment of similar crimes for similarly situated offenders. *State v. Morain*, 2008-1546, p. 4 (La. App. 3 Cir. 6/30/09), 11 So.3d 733, 737.

At the outset of any review of comparative sentences, it must be noted that well-settled jurisprudence establishes that an excessive sentence review contemplates not only the length of the sentence, but also the availability and restrictions of benefits regarding parole eligibility and early release. *See LeBlanc*, 2009-1355, p. 11, 41 So.3d at 1174. Therefore, the actual sentence an offender is likely to serve is an important element in determining if a sentence is excessive.

In *LeBlanc*, the Supreme Court reversed the decision of the appellate court to vacate the trial court's imposition of the maximum thirty-year sentence for vehicular homicide for a first-time offender without a prior record, where the defendant had been cited for DWI, possessed cocaine and marijuana, and had a "cocktail" of cocaine and other legal drugs in her system. *Id.*, 2009-1355, pp. 11-13, 41 So.3d at 1174-75. The Court noted that the defendant had an acknowledged long-standing history of abusing legal and illegal drugs, "punctuated by a few, half-hearted attempts to receive treatment," and had gone on a self-confessed cocaine binge in the days leading up to the fatality accident. *Id.*, 2009-1355, p. 12, 41 So.3d at 1174. The Court also found that the defendant did not necessarily accept her culpability for the accident, pointing out that the defendant reaped the benefits of a plea bargain, which reduced her sentence by nearly 20 years. *Id.* Moreover, the Court highlighted that the trial court imposed the mandatory minimum of three years for parole eligibility and crafted a sentence that made it possible for the defendant to obtain early release and earn good-

6

time credit after serving one-third of her term; as such, the Supreme Court observed that the defendant's "maximum thirty (30) year sentence [was] actually a fifteen (15) year sentence at best." *Id.*, 2009-1355, p. 11, 41 So.3d at 1174. The Court then opined that "the availability of early release options is generally a relevant consideration in review of sentences for excessiveness." *Id.* Accordingly, in consideration of those factors, the *LeBlanc* Court found the defendant's original sentence was not excessive, reversed the appellate court, and remanded the case to the district court for execution of the original sentence. *Id.*, 2009-1355, p. 13, 41 So.3d at 1175.

Therefore, in the context of the above-referenced criteria, Mr. Toney is entitled to have his sentences and parole eligibility/early release options compared with that of other multiple vehicular homicide offenders to determine excessiveness.

Maximum Sentences

In *State v. Crenshaw*, 39,586 (La. App. 2 Cir. 4/6/05), 899 S.2d 751, the defendant went to trial on two counts of vehicular homicide, wherein he challenged the sufficiency of the evidence to prove that he was the driver. Upon conviction, the defendant received the then maximum sentences of twenty years each at hard labor for two counts of vehicular homicide, to be served consecutively, with one year each to be served without benefits. *Id.*, 39,586, p. 2, 899 So.2d at 753-54. Notably, at the time of sentencing, there was no statutory mandate for consecutive sentences for multiple counts of vehicular homicide. Nevertheless, the appellate court found that the consecutive sentences were not constitutionally excessive where the defendant had gone to trial and had three prior DWI convictions. *Id.*, 39,586, pp. 14-16, 899 So.2d at 759-61.

The appellate court found that maximum sentences of fifteen years for three counts of vehicular homicide in *State v. Guillory*, 1993-1031 (La. App. 3 Cir. 4/27/94), 640 So.2d 427, were not excessive. The Third Circuit noted that the sentences were to

be served concurrently; the defendant had one prior felony conviction and three misdemeanor convictions; the defendant had a blood alcohol level of .29; and after drinking excessively on the night of the accident, the defendant had twice been urged by others not to drive. *Id.*, 1993-1031, 647 So.2d at 430.

In *State v. Yates*, 574 So.2d 566 (La. App. 3 Cir. 1991), the defendant argued that his two consecutive five-year sentences—the maximum at the time—for two counts of vehicular homicide were excessive. Although the defendant received the maximum sentence, the sentence on count two was suspended and the defendant was placed on supervised probation for five years after release from confinement. *Id.*, 574 So.2d at 567. In affirming the over-all sentence, the Third Circuit found that the sentence was not excessive, emphasizing that the defendant had two prior DWI convictions, showed no remorse for his conduct, and continued to drink on a daily basis after the accident. *Id.*, 574 So.3d at 569-70.

<u>Non-Maximum Sentences</u>

The defendant in *State v. Benavides*, 54,265 (La. App. 2 Cir. 3/9/22), 336 So.3d 114, went to trial and was convicted on two counts of vehicular homicide. The trial court imposed sentences of twenty and nineteen years; however, did not address the length of time to be served without benefits. Defendant maintained on appeal that the sentences were excessive given that he had a family to support and had no prior offenses. *Id.*, 54,265, p.17, 336 So.3d at 123. The appellate court found the mid-range sentences were not excessive, noting that although the defendant had no prior record, he admitted that he had an active drinking problem. *Id.*, 54,265, p. 23, 336 So.3d at 125. As in *LeBlanc, supra*, the trial court stated that the "sentence should give the defendant the incentive for rehabilitation and to take advantage of early release on parole." *Id.*[2]

---

[2] The sentencing transcript showed the trial court failed to specify the statutory time that the sentences were to be served without benefits. Accordingly, the matter was remanded for resentencing solely that purpose. *Benavides*, 54,265, p. 27, 336 So.3d at 126.

8

In *State v. Gordon*, 2017-846 (La. App. 3 Cir. 3/28/18), 240 So.3d 301, the defendant pled guilty to three counts of vehicular homicide as a result of driving under the influence of methamphetamines, in exchange for the State's dismissal of a negligent injuring charge. The trial court sentenced the defendant to eighteen years at hard labor on each count for killing three members of the same family, with three years served without benefits. The defendant had no criminal record. The principal aggravating factors in defendant's case were that the defendant admitted to a long-standing, on-going problem with methamphetamine abuse— which included taking the drug almost every other day—and a finding that methamphetamines and amphetamines were, in fact, found in his urine sample after the accident. *Id.*, 2017-846, p. 6, 240 So.3d at 306. Hence, the *Gordon* Court found that the eighteen-year consecutive sentences imposed, three years without benefits, were not constitutionally excessive.

The defendant in *State v. Ellis*, 2010-1019, pp. 2-3 (La. App. 5 Cir. 5/24/11), 67 So.3d 623, 626-27, a first time felony offender, entered an *Alford* guilty plea to two counts of vehicular homicide while driving under the influence of marijuana. The trial court sentenced the defendant to concurrent sentences of twenty-five years at hard labor and imposed the first five years without benefits. *Id.*, 2010-1019, p. 2, 67 So.3d at 624.[3] At sentencing, the trial court found that the defendant was arrested for drug possession on the date of the accident, had marijuana in his system, was driving recklessly with a suspended license, and showed no remorse. *Id.*, 2010-1019, pp. 4-5, 67 So.3d at 626. In rejecting the defendant's excessive sentence claim, the appellate court observed that the trial court made it possible for the defendant to be released on parole after serving one-third of his twenty-five year sentence, or approximately 8.33 years, and considered the defendant's

---

[3] At the time of the defendant's offense in *Ellis*, 2010-1019, 67 So.3d 623, the imposition of consecutive sentences for multiple vehicular homicides, although available, was not statutorily mandated.

9

eligibility for early release on good time credits. *Id.*, 2010-1019, p. 6, 67 So.3d at 627. The appellate court, quoting *LeBlanc*, 2009-1355, p. 11, 41 So.3d at 1173, found that "[t]he availability of early release options is generally a relevant consideration in review of sentences for excessiveness." *Id.* Consequently, given the parole eligibility considerations, the benefit the defendant reaped from his plea agreement, and the circumstances of the offense, the *Ellis* Court affirmed the defendant's sentences, finding no abuse of the trial court's discretion. *Id.*, pp. 6-7, 2, 67 So.3d at 627.

The defendant in *State v. Edison*, 37,012 (La. App. 2 Cir. 5/14/03), 847 So.2d 140, entered guilty pleas to two counts of vehicular homicide in exchange for the State's agreement to dismiss two counts of first degree negligent injuring. The trial court imposed two concurrent terms of fourteen years, with the first year to be without benefits. The maximum sentence at the time was twenty years. Considering the gravity of the offenses and the benefit Defendant received from the plea bargain, the appellate court affirmed the defendant's sentences. *Id.*, 37,012, 847 So.2d 14.

In *State v. Trahan*, 1993-1116 (La. App. 1 Cir. 5/20/94), 637 So.2d 695, a first-time felony offender, went to trial and was convicted on three counts of vehicular homicide. He was sentenced to three ten-year prison terms, to be served concurrently. The statute in effect at the time provided for a sentence of two to fifteen years. The appellate court determined that the sentence was not excessive where the defendant showed little remorse for his conduct after the accident, and while awaiting trial, was observed having several drinks at a bar. *Id.*, 1993-1116, 637 So.2d at 708-09.

In *State v. Stein,* 611 So.2d 800 (La. App. 3 Cir. 1992), the defendant pled no contest to two counts of vehicular homicide and received concurrent sentences of four and one-half years. The statutory sentencing range at the time was two to

fifteen years. The defendant had two prior misdemeanor convictions. Based on the defendant's possible exposure to a fifteen-year sentence and the imposition of concurrent sentences, the appellate court denied the defendant's excessive sentence claim. *Id.*, 611 So.2d at 802.

Notwithstanding the inexplicable grief and carnage inflicted by Mr. Toney as a result of this tragic accident, based on our review of the foregoing sentences imposed for multiple vehicular homicide offenders and their respective backgrounds, Mr. Toney's maximum sentences and the thirty years imposed without benefits are inconsistent with the sentences imposed on the other offenders. For example, the background of the *Crenshaw* defendant, arguably the most egregious offender, included three DWI convictions, and moreover, he did not accept responsibility for his actions by requiring the State to go to trial. In comparison, Mr. Toney had one DWI citation—no convictions—and accepted responsibility by entering a guilty plea. Although the *Crenshaw* defendant received the maximum twenty-year sentences, he only had to serve one year each without benefits.

Here, Mr. Toney not only received the total maximum sentences of sixty years, but also was required to serve a total of thirty years without benefits without the availability of early release options. The thirty-year consecutive sentences imposed, with fifteen years without benefits on each sentence, means that a minimum, Mr. Toney will have to serve thirty years before any consideration for parole eligibility. Additionally, Mr. Toney faces other parole eligibility release restrictions because he was found to have committed a crime of violence premised on his 0.20 percent BAC level. Pursuant to La. R.S. 15:574.4(B), the existence of a 0.20 percent BAC would require Mr. Toney to serve at least sixty-five percent of

11

the sentence to become parole eligible.[4]  Based on that computation, Mr. Toney would have to serve 39 years for the DOC to consider him for parole eligibility and/or early release.

Additionally, although the existing maximum sentences were imposed in the *Guillory* and *Yates* cases, unlike Mr. Toney, those offenders received the benefit of concurrent or suspended sentences, and had considerably worse backgrounds.  In particular, the *Guillory* defendant received concurrent fifteen-year sentences, although he had a prior felony and misdemeanor convictions and had been repeatedly urged not to drink on the night of the accident.  Similarly, the *Yates* defendant received a suspended five-year sentence on the second count of his vehicular conviction and his background included two prior DWI convictions, a lack of remorse, and continued drinking after the accident.

As to benefits and early release options, the other comparable offenders in *Benavides*, *Gordon*, *Ellis*, *Edison*, *Trahan*, and *Stein* discussed hereinabove not only received less than the maximum sentences and/or concurrent sentences, they also received lesser restrictions on benefits, ranging from one to five years.  The record in the present matter supports a statutory minimum five-year restriction on benefits based on Defendant's BAC.  However, in placing the thirty-year restrictions on benefits, the trial court failed to provide specific reasons. This failure contravened this Court's directive upon remand in *Toney I*, 2021-1031, 331 So.3d at 407-08, to state the considerations "for restricting benefits on sentences." Here, Mr. Toney's restrictions on benefits were triple that of other multiple homicide offenders, and as underscored in *LeBlanc*, *supra*, those restrictions are a relevant consideration in a review of sentences for excessiveness.

---

[4] La. R.S. 15:574.4(B) states in part that '[n]otwithstanding any other provisions of law to the contrary, a person convicted of a crime of violence and not otherwise ineligible for parole shall serve at least sixty-five percent of the sentence imposed, before being eligible for parole."

The majority relies on *State v. McKinney*, 2023-162 (La. App. 3 Cir. 10/4/23), 372 So.3d 957 and *State v. Cook*, 674 So.2d 957, 958 (La. 1996) to reject Mr. Toney's argument that a review of similar sentences supported that more egregious circumstances and offenders received more lenient sentences. However, closer scrutiny reveals that the results reached in *McKinney* and *Cook* are distinguishable from the present matter.

In *McKinney*, 2023-162, p. 1, 372 So.3d at 959, the trial court sentenced the defendant to the maximum sentence of 30 years for vehicular homicide, with the first three years to be served without benefits, and in conjunction therewith, suspended seven years of the defendant's sentence and placed him on supervised probation for three years upon his release. In crafting the sentence, the trial court stated "I believe that I am allowed to look at the sentence itself and look at the amount of time under the law that he is likely to serve." *Id.*, 2023-162, p. 10, 372 So.3d at 964. The trial court further noted the defendant's eligibility for parole and opined that there's no reason to think the defendant would not get his "good time"—which is not discretionary; and opined that under the circumstances the defendant's overall sentence was not "not close to being cruel and unusual under the Constitution. *Id.* On appellate review, the *McKinney* court determined that the defendant's excessive sentence claim lacked merit because notwithstanding the defendant's characterization, the trial court did not impose the maximum sentence. The court pointed out that the trial court suspended seven years of the defendant's sentence and ordered that the first three years only be served without benefits, although statutorily, the defendant's blood alcohol level required that at least five years be served without benefits. 2023-162, pp. 17-18, 372 So.3d at 967. Moreover, the *Mckinney* court noted that the trial court considered good time and parole in fixing the Defendant's sentence. *Id.*, 2023-162, p. 18, 372 So.3d at 967. The appellate court quoting *LeBlanc*, 2009-1355, p.11, 41 So.3d at 1174, in finding

13

"[t]he availability of early release options[,]" the supreme court has explained, "is generally a relevant consideration in review of sentences for excessiveness." *Id.*

Unlike *McKinney*, in the matter *sub judice*, Mr. Toney unequivocally received the maximum sentence. The trial court did not suspend any part of Mr. Toney's sentence. Further, the trial court's imposition of thirty years without benefits reflects that the trial court gave no consideration to the availability of early release, a relevant consideration in considering an excessive sentence claim.

The majority compares Mr. Toney to the defendant in *Cook*, whose 9-year sentence at hard labor for one count of vehicular homicide was reinstated by the Supreme Court, in part, because of the defendant's flight from the scene. The majority notes that the Court observed that the defendant's flight "manifested deliberate cruelty to the victim" because it "could have meant the difference between an individual living and dying." 674 So.2d at 958. However, the *Cook* defendant's "flight" differs from Mr. Toney's flight. In *State v. Cook*, 1995-212, p. 1 (La. App. 3 Cir. 10/18/95), 664 So.2d 489, 490, the facts show that the defendant purposefully left the scene of the accident to drive to a friend's residence. The victim was unconscious, face down in a ditch, and died from the trauma. *Id.* Although Mr. Toney attempted to flee in the present matter, no evidence was introduced that his flight was purposeful and that the victims' outcome would have been different but for his attempted flight. Moreover, in contrast to Mr. Toney, the *Cook* defendant did not receive the maximum sentence.

Accordingly, upon review of the offense, Defendant's background, and comparison with similar multiple homicide defendants, the trial record does not support that Mr. Toney is the worst of the multiple vehicular homicide offenders for whom the maximum sentence is reserved. I find the overarching factors of this case are more analogous to the defendant in *Morain*, 2007-1207, 981 So.2d 66. In *Morain*, the defendant had no prior DWI convictions, showed remorse for his

14

actions, and had not been involved in other criminal activity; consequently, upon comparison of the defendant's conduct and offense with other offenders who received the maximum sentence, the Third Circuit concluded that the maximum twenty-year sentence imposed on the defendant was excessive and remanded for resentencing. *Id.*, 2007-1207, pp. 11-12, 981 So.2d at 72-73.

As per *Leblanc*, our jurisprudence has generally upheld the imposition of maximum sentences where the defendant has the availability of early release options and the actual sentence served will be less than the maximum; that is not the case here. Thus, Mr. Toney's contention that the vehicular homicide sentences are excessive has merit.

Based on the foregoing reasons, I respectfully dissent in part and would remand for resentencing Mr. Toney's vehicular homicide convictions.